STANDARD LIFE & ACCIDENT INS. CO. v. FRASER.

(Circuit Court of Appeals, Ninth Circuit.   October 6, 1896.)

No. 295.

1. ACCIDENT INSURANCE—APPLICATION—ADVICE OF AGENT.
    A provision in the application and policy that no agent can waive any provisions of the policy does not protect the company, where the applicant truly states the facts, and then answers in accordance with the agent's advice, as to the effect of such facts.

2. SAME—OCCUPATION OF INSURED—QUESTION FOR JURY.
    An applicant stated that his occupation was "proprietor of a bar and billiard room, not tending bar." The evidence was that he tended bar to the extent of relieving his bartenders occasionally at lunch or meal hours. *Held,* that the question whether the occupation of the insured was as stated in his application was a question for the jury.

3. SAME—VIOLATIONS OF LAW.
    An accident policy provided that the insurance should not cover violations of law. The insured, shortly after committing the misdemeanor of shaking dice with another, was shot and killed by the latter. There was no evidence that any quarrel arose over the game, or that any provocation was given up to the moment of the shooting. *Held,* that it was a question for the jury whether the death resulted from the violation of law.

In Error to the Circuit Court of the United States for the Northern Division of the District of Washington.

This was an action by Eliza M. Fraser against the Standard Life & Accident Insurance Company to recover $4,000, which she alleged was due her under a policy of accident insurance issued by the company upon the life of Harry L. Fraser. From a judgment in favor of plaintiff, defendant brings error.

James Kiefer, for plaintiff in error.

Lindsay, King & Turner, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge.   Eliza M. Fraser, the widow and beneficiary of Harry L. Fraser, deceased, commenced an action in the court below to recover from the plaintiff in error $4,000, which she alleged

was due her under a policy of accident insurance issued by said insurance company upon the life of said Harry L. Fraser. The insurance company set up several defenses, the first of which was that the policy was issued in consideration of warranties contained in the application, in which the applicant, at the time of applying for the insurance, had warranted that he had no other accident insurance in the said company, or any other company, and that he had made no application for accident insurance upon which he had not been notified of the company's action thereon, which warranties were false and untrue, in this: that on the 26th day of January, 1894, more than a year before Fraser's application, there had been issued to him, by the Fidelity & Casualty Company of New York, a policy insuring him against accident in the sum of $2,000 for 12 months, and that at the expiration of that policy, and on or about January 26, 1895, the same company, at the request of the insured, had renewed the same for 12 months thereafter. A second defense was that, subsequent to the issuance of the policy sued upon, the insured had violated the terms of the insurance contract by doing an unlawful act in that he had voluntarily engaged in and played a game of dice for money, and during the game he had become involved in a dispute over the result of the same and the ownership of the money bet thereon, and during the progress of said dispute, and as a result of said game, the insured was shot, and thereby met his death. A further defense was that the insured had warranted in his application that his occupation was "proprietor of Hotel Northern sample and billiard rooms, not tending bar," and that said statement was false and untrue, in this: that said insured did tend the bar of said hotel, and did frequently tend and wait upon the drinking bar therein, and that by reason of said false description of his occupation he obtained classification of his occupation as "preferred," and thereby secured a policy in $4,000, whereas, if he had stated his occupation correctly, as that of saloon keeper tending bar, the highest amount of insurance which the company would have granted would have been $2,000. The jury returned a verdict for the sum of $4,000, and returned negative answers to four special interrogatories submitted to them by the court, thereby finding that the insured did not receive his injuries as the result of being engaged in a violation of the law, and that he did not lead the agent of the insurance company to believe that the prior policy he had obtained from the Fidelity & Casualty Company was to be superseded by the policy which he obtained from the defendant in error, and also that the assault made upon the insured, whereby he lost his life, was unprovoked.

It is assigned as error that the court permitted the defendant in error to prove that one Brydges, who was the solicitor of the insurance company, was, at the time the insurance was applied for, fully advised of a state of facts directly the opposite to that represented by the answers of the insured to the question propounded to him in the application blank, viz. whether or not he had, or had applied for, other insurance. The testimony so admitted was that of the agent himself, who said that when he wrote up Fraser's application Fraser stated to him that he had a policy in the Fidelity & Casualty Company, which had expired on January 26, 1895, and

had been renewed, but that the renewal had not been paid for, and that thereupon he, the agent, advised Fraser that the policy was not in force, and that Fraser could truthfully answer that he had no other accident insurance. It appeared that the agent was merely a solicitor of insurance, and had no power to issue policies, and that he turned in the application to the local office, which was authorized to write policies, without saying anything about the insurance in the Fidelity & Casualty Company. He also testified that from his conversation with Fraser he understood that the Fidelity policy was not to be renewed, and that the policy in suit was to supersede it. It appeared from the evidence that subsequently the premium was paid upon the prior policy, and that the policy remained in force during the year succeeding January 26, 1895.

It is contended by the plaintiff in error that the decision of the supreme court in the case of Insurance Co. v. Fletcher, 117 U. S. 519, 6 Sup. Ct. 837, is decisive of the question here involved, and establishes the doctrine that, where notice is given in the application itself that the powers of the soliciting agent are limited, the company is not bound by any statement or conversation between the agent and the insured which is not embodied in the application, or brought to their notice. In that case the agent of the insurance company had questioned the insured on subjects material to the risk, and the latter had made answers which, if correctly written down and transmitted to the company, would probably have caused it to decline the risk. The agent, with the knowledge of the applicant, wrote down false answers, concealing the truth, and transmitted the application to the company, whereupon the policy was issued. It was expressly conditioned in the policy that the answers in the application were part of the policy, and that no statement to the agent, not embodied in the application, should be binding on the company, and a copy of the answers, with these conditions conspicuously printed upon it, accompanied the policy. The court held the policy void. In the present case there is no stipulation, either in the policy or in the application, to the effect that no statement to the agent not transmitted to his principal shall be binding upon the latter. The only limitation of the powers of the agent is that contained in the policy, which provides that the terms of the policy "cannot be waived or altered by any agent," and the stipulation in the application, whereby the applicant agrees that the application and warranty "shall be the basis of the contract between the company and me, and I accept the policy which said company shall issue upon this application subject to all conditions, provisions, and classifications contained in such policy or referred to therein, which I understand cannot be altered, changed, or waived by any agent of said company, either before or after the issuing thereof." It will be seen, therefore, that the case of Fraser is very different from that of Fletcher in the decision above referred to. Fraser truly stated all the facts concerning his prior insurance. He perpetrated no fraud upon the company or its agent. He stated the facts, and the agent placed an interpretation upon them. The agent said that under those facts the applicant could truly answer that he had no other insurance. There is nothing in the policy or the application to inform

an applicant that the agent of the insurance company may not advise him concerning the facts essential to be considered in making the contract, or that the company may not be bound thereby. In Insurance Co. v. Chamberlain, 132 U. S. 304, 10 Sup. Ct. 87, an applicant for insurance, in answer to the question whether he had other insurance, had informed the agent that he had certain certificates of membership with certain co-operative societies, and that he did not know whether they would be considered insurance or not. The agent thereupon informed him that they were not insurance, and wrote the answer "No" to the question. The court held that the acts of the agent in these respects were the acts of the insurance company, and in so holding gave effect to a statute of the state of Iowa, where the insurance contract was made, which provided that "any person who shall hereafter solicit insurance or procure applications therefor, shall be held to be the soliciting agent of the insurance company or association issuing a policy on such application, or on a renewal thereof, anything in the application or policy to the contrary notwithstanding." It is true that in the state of Washington, where the contract now before the court was made, there is no statutory provision similar to that of Iowa just quoted, but, even in the absence of a statute, the principles which govern the decision of the Chamberlain Case must control the case under consideration. There was no stipulation in the application or the policy in the present case that the soliciting agent who procured the insurance was not to be deemed the agent of the insurance company, and it is not disputed that he was such agent. The company relies, not upon the contention that he was not their agent, but upon the limitations they had placed to his powers. Those limitations are confined to withholding the power to alter the terms of the policy of insurance. There is not withheld from the agent the power to act for the company in other respects, or to bind the company in deciding for it whether or not the facts detailed truthfully and in good faith by the insured did or did not amount to evidence of a prior insurance. Insurance Co. v. Baker, 94 U. S. 610; Insurance Co. v. Mahone, 21 Wall. 152; Insurance Co. v. Wilkinson, 13 Wall. 222.

It is contended also that there was a breach of warranty upon the part of the insured with respect to his occupation. In his application he is described as a "proprietor of a bar and billiard room, not tending bar." The evidence was that he tended bar to the extent that he relieved his bartenders occasionally at lunch or meal hours, and waited upon customers at such times. It may well be doubted whether, in view of the stipulations in the policy and the application which provide that, if any injury is received by the insured in any occupation classed by the company as more hazardous than the one stated, he should be entitled to recover only such amount as the premium paid would purchase at the rates fixed by the company for such increased hazard, there could be any breach of the warranty of his occupation, so long as his real occupation was one of those which the company held itself out as ready to insure. The amount for which the company undertook to insure a barkeeper for a given premium was one-half the amount for which it insured the applicant, and it would seem that its remedy in such a case would be

to have its liability in case of death reduced according to the real occupation of the insured, and that the description of the occupation of the applicant as stated in the application would be a representation only, and not a warranty.    But that question is not necessarily involved in the decision of this case.    The trial court instructed the jury that it was for them to say what was the occupation of the insured.    The court said: "The phrase in the policy was intended to describe the occupation—the regular business—of the applicant, and, if you find from the evidence that the said Fraser was not engaged in the business or occupation of tending bar as a business or occupation, you should disregard this defense."    We find no error in this instruction.    The question whether the occupation of the insured was as stated in his application was a question for the jury, and was determined by the jury in favor of the defendant in error.

Error is assigned to the refusal of the court to direct the jury to return a verdict for the plaintiff in error on the ground that it appeared conclusively from the evidence that the insured lost his life while engaged in the commission of an unlawful act.    It had been provided in the policy that the insurance should not cover "violation of law, resisting arrest, or fleeing from justice."    It is contended on the part of the defendant in error that the violation of law which is here referred to is confined to the specific instances which are described in the two following sentences, "resisting arrest or fleeing from justice."   Whether or not this contention is correct, it is unnecessary here to determine.    The evidence in the case does not, to our minds, conclusively establish the fact that the deceased met his death as the direct result of violation of law.    The statute of Washington prohibited the act of gambling in dice, in which he had been engaged just prior to his death, and declared the same to be a misdemeanor; but the evidence concerning the connection of the unlawful act with the death of the insured was properly submitted to the jury under instructions from the court.    The jury found that the shaking of the dice was not wholly or partly, directly or indirectly, the cause of the shooting.    According to all the testimony, there was no provocation for the shooting, there had been no dispute over the game, and there had been no trouble between the parties engaged in it up to the very time of the shooting.    There was some conversation between the insured and his assailant about changing money, and, in the course of the conversation, the latter drew his weapon and shot.    There was nothing to show that any ill feeling between the parties was engendered by the game.    The cause for the shooting was wholly unexplained.    We cannot see that the evidence conclusively establishes the fact that gambling with dice for money, in violation of the statute of Washington, caused the death of the insured.    It would have been error, therefore, to instruct the jury to that effect.

We find no error for which the judgment should be reversed, and it is accordingly affirmed, with costs to the defendant in error.