Fox, Respondent, vs. Masons' Fraternal Accident Asso-
ciation of America, Appellant.

*May 6 — May 21, 1897.*

*Accident insurance: Agreement to arbitrate, when void: Public policy:
Occupation: "Lumberman in woods:" Special verdict: Instructions:
Construction of policy: Particular exposure: Self-executing change
of classification.*

1. A provision in a mutual accident insurance policy requiring all
   questions between the association and the assured to be, at its op-
   tion, settled by arbitration, thereby ousting the courts of jurisdic-
   tion over every part of the subject of liability and the amount
   thereof as well, is void as against public policy.
2. The fact that at the time of his injury the insured was superintend-
   ing a small portable sawmill temporarily located in the woods for
   the purpose of cutting logs into lumber for use in a planing mill
   owned by him, does not, as matter of law, make his occupation
   other than that of a "mill owner, overseeing only," or place him
   in the classification including the more hazardous occupation of
   a "lumberman in the woods."
3. Where several questions were submitted to the jury for special ver-
   dict in an action on an accident insurance policy, each seeking to
   determine by an affirmative or negative answer whether the as-
   sured at the time of the accident was engaged in a separate and
   distinct occupation, it was not error to instruct the jury that if
   they answered any one of the questions in the affirmative they
   must necessarily answer the others in the negative.
4. Where an accident insurance policy provided that "if the assured
   is injured in any occupation or exposure classified by the associa-
   tion as more hazardous than that here given, his insurance and
   weekly indemnity shall only be so much as the premiums paid by
   him will purchase at the rates fixed for such increased hazard,"
   and the scheme of insurance classified occupations and not acts
   and exposures, a particular exposure, though not in pursuit of and
   as a part of the business or occupation mentioned in the certifi-
   cate, is not material to affect the liability of the insurer.
5. Under a contract of accident insurance locating the policy holder
   in a particular class and specifying as nearly as practicable his
   actual occupation, a provision that, in case of change of occupation
   to one more hazardous than that named, the insured should be

entitled to recover only such an amount as the premium paid by him would purchase at the rates fixed for the increased hazard, is self-executing, no change in the certificate itself being necessary to effect a reduction of the amount of insurance.

6. Thus, a letter from the insured to the company notifying it of a change of occupation, and the reply of the company that the classification of the insured had been reduced from class 2 to class 3, as effectually modified the contract as if the change had been written into the certificate.

APPEAL from a judgment of the circuit court for Waupaca county: CHAS. M. WEBB, Circuit Judge. *Reversed.*

Action to recover for a death indemnity on a certificate of insurance issued by the defendant, a mutual accident assurance association. George H. Fox made his application to the association with knowledge of its method of business and of the manual of classification of risks with reference to which all certificates of indemnity were issued, about the 26th day of November, 1888. He was then a station agent at Mankato, Minnesota. A certificate was duly issued to him upon such application, classifying his occupation as in class 1; death indemnity, $5,000. Such application contained a stipulation to the effect that, in case he should be injured in any occupation or exposure classified by the association as more hazardous than the one stated in such application,— that of station agent,— he should be entitled to recover only such an amount as the premiums paid by him would purchase at the rates fixed for the increased hazard. The certificate contained a similar stipulation. It also contained a stipulation to the effect that all questions respecting the liability of the association should be settled by arbitration, at its option; that no suit should be brought except to enforce payment of the award of the arbitrators, unless the association refused to arbitrate, and that no suit should be brought at all after the expiration of one year from the date of the accident. On the 2d day of June, 1890, the assured notified the association in writing that he had changed his occupation to that of part owner in a sawmill at Big Falls, Minne-

sota; that his duties were general supervision of the business, and that they would require him to be around the mill, lumber yard, office, and store. Thereupon he was notified by the association to send in his certificate with a full statement of his work. Such request was complied with, and thereafter the association changed the certificate by placing the assured in class 2, specifying his occupation as mill owner, overseeing only; death indemnity, $3,000. Thereafter, on the 31st of April, 1892, the assured notified the association of another change in his occupation, and that he had changed his residence to Waupaca, Wisconsin, where he was associated with C. J. Shearer as owner and operator of a planing-mill business, dealing in lumber, lath, sash, doors, etc., turning, scroll sawing, and bracket work, contractors and builders; that his duties would consist of supervising the yard and mill, with a likelihood that he might necessarily, for an hour or two, from time to time, be required to operate some of the machinery. Thereupon he was placed in class 3, as a salesman and general supervisor of lumber mill and yard, not working; death indemnity, $2,000; and a notification of such change was sent to him as follows:

"Westfield, Mass., May 9, 1892.

"Geo. H. Fox, Waupaca, Wis.— Dear Sir and Brother: We are in receipt of your letter of April 10th, and in reply will say that in your present occupation you would be classed as 'salesman and general supervisor in lumber mill and yard, not working; in class three.' Of course, you understand that, although the words 'not working' follow the occupation, if you should be injured while working a machine, you would not be deprived of indemnity, but for such accident you would draw the same as a brother insured for that work all the time. If you desire your certificate changed, you can send it to this office, and we will make the change, and return to you. Trusting this will be satisfactory, I remain, courteously and fraternally, yours,

"JAS. A. LAKIN, Secretary."

The certificate remained without change up to the time of the death of the assured. No notice was given to the company of dissatisfaction with the classification stated in the communication to the assured of May 9, 1892.

Some time prior to April 17, 1894, the assured and his co-partner purchased a tract of land in the woods some twenty miles from their Waupaca plant, and located a small portable mill there for the purpose of logging off the land, and cutting the logs into lumber for use at such plant. The operations in the woods, prior to the date mentioned, had progressed to the extent that most of the logging had been done. The assured then went there to personally superintend the business, and continued in such occupation up to the time of his injury. On the 17th day of July he went into the woods to look after the operations there in progress. While so doing, with an ax he attempted to cut away an elm tree top that interfered in getting to some logs, and in doing so cut his foot, from the effects of which, it is alleged, he subsequently died.

No request was made of the association to arbitrate the question of liability. The complaint was in the usual form, ignoring the second classification made in response to the assured's notification of change of occupation of April 30, 1892. The amount claimed in the complaint was $3,000. The answer, among other things, pleaded in abatement the arbitration clause of the certificate, and failure on the part of the beneficiary to comply therewith. It set up the facts in respect to the work the assured was doing at the time he was injured, his occupation for some time prior thereto, and alleged that it placed him in class 6, as a lumberman in the woods,— death indemnity, $1,000; and alleged that, if he was not in such class, but was a mill owner, superintending only, he was in class 3, and entitled to but $2,000.

At the close of the plaintiff's case defendant's counsel moved for a nonsuit, which was refused, and due exception

was taken. The jury rendered a special verdict, in which all the facts were found in plaintiff's favor. Among others, were the following findings: "Q. At the time of the accident and injury, was the occupation of deceased that of mill owner, overseeing only? A. Yes. Q. At the time of the accident and injury, was the occupation of deceased that of lumberman in the woods? A. No. Q. At the time of the accident and injury, was the occupation of deceased that of lumberman overseeing in the woods, not working? A. No. Q. At the time of the accident and injury, was the occupation of deceased that of proprietor of mill and superintendent only? A. No." A motion was thereupon made to set aside the verdict, and for a new trial on the minutes of the court, on exceptions to the charge, and because the same was contrary to the evidence. Proper exceptions were taken and preserved to raise the questions discussed. Judgment was rendered in plaintiff's favor, and defendant appealed.

For the appellant there was a brief by *Paul H. Sanborn,* attorney, and *R. J. Burglehaus,* of counsel, and oral argument by *Mr. Burglehaus.*

For the respondent there was a brief by *E. L. & E. E. Browne,* attorneys, and *Bump, Kreutzer & Rosenberry,* of counsel, and oral argument by *Mr. E. E. Browne.*

MARSHALL, J. Counsel for the appellant claim that the learned circuit judge erred in not nonsuiting the plaintiff, because the contract of insurance prohibits any suit other than to enforce payment of an award of arbitrators, except upon the refusal of the association to arbitrate. The contract was clearly so worded as to require all questions between the association and the assured to be, at its option, settled by arbitration, and to thereby wholly oust the court of jurisdiction over every part of the subject of liability and the amount thereof as well. On grounds of public policy, all agreements between parties to submit the whole subject

matter of their differences to arbitration, wholly stipulating away the rights of each or either party to resort to the tribunals created by the law of the land for a determination of such differences, are void, and have been uniformly so held. *Hamilton v. Liverpool, L. & G. Ins. Co.* 136 U. S. 242; May, Ins. § 492; *Leach v. Republic F. Ins. Co.* 58 N. H. 245. Agreements to arbitrate special matters, such as, under an insurance policy, the amount of the loss, something that does not go to the whole groundwork of the controversy, have been as universally sustained. *Viney v. Bignold,* 20 Q. B. Div. 172; *Scott v. Avery,* 5 H. L. Cas. 811; *Delaware & H. Canal Co. v. Pennsylvania Coal Co.* 50 N. Y. 250; *Reed v. Washington F. & M. Ins. Co.* 138 Mass. 572; *Wolff v. Liverpool & L. & G. Ins. Co.* 50 N. J. Law, 453; *Hall v. Norwalk F. Ins. Co.* 57 Conn. 105. It is not here contended, as we understand it, that the contract in question belongs to the first class, or that a general provision requiring the whole subject of a controversy to be submitted to arbitration can ordinarily be sustained, but it is contended that such contract is of a class which forms an exception to the general rule, because, as said by counsel for appellant, the association is purely a mutual company; that its contracts are between certificate holders; and that any inexpensive method they may see fit to adopt to settle their differences should be upheld. No authority is brought to our attention to support such contention, and we may safely say that none exists, and that there is no reasonable theory upon which it can rest. There is no exception to the rule that parties cannot wholly deprive themselves, by contract, of the right to resort to the courts of the country to settle controversies between them; hence it necessarily follows that the ruling of the trial court that the arbitration clause in the certificate under consideration was void at the election of either of the parties must be sustained.

Error is assigned on the refusal of the trial court to set

Fox vs. Masons' Fraternal Accident Association of America.

aside the answers to questions 4, 5, 6, and 7, as contrary to the evidence. The idea of appellant's counsel is that, from the location of the mill and the general nature of the business, the assured was a lumberman in the woods, and that the fact should have been so found. The questions were peculiarly for the jury, and we see no reasons to disturb their findings. To be sure, the mill the deceased was overseeing was in the woods, and was a small, portable affair, located temporarily some distance from the main business in which the deceased was engaged, for use in cutting into lumber logs taken from a small tract of land there situate, for transportation to the Waupaca factory. But the question is not, necessarily, whether the sawmill enterprise was essentially a part of the Waupaca business, but is rather, What was the occupation deceased was engaged in when he was injured, and, if different from that named in the certificate, was it one classified by the association as more hazardous than the one so named? Certainly there is evidence to sustain the finding that the deceased was a mill owner, superintending only. It will serve no valuable purpose to recite the evidence in that regard. Suffice it to say that it is ample to support the verdict. A sawmill is such, whether great or small. Neither its size, nor the place of its location, determines its character. A mill in a settled community obviously does not change its character because located in the timber at a distance from town, city, or village.

Error is assigned on the instruction given to the jury to the effect that, if they determined the occupation the deceased was engaged in when injured by an affirmative answer to one of the questions, they must necessarily answer the other questions on that subject in the negative, as he could have had but one occupation in that place at that time. Such instruction appears to be free from error. The deceased had been overseeing the business of operat-

ing the mill in the woods, and the work incident to it, ex-
clusively for about three months. Therefore, when the
jury determined what that occupation was from the evi-
dence, they could not consistently say it was any other. A
finding in the affirmative as to one question in effect oper-
ated to negative all the rest on the same subject.

It was also assigned for error that the trial court over-
ruled defendant's motion for the direction of a verdict in
plaintiff's favor for $1,000. That has been, in effect, dis-
posed of by what has preceded, unless the fact be that the
assured was injured through an exposure outside of the oc-
cupation mentioned in the contract as found by the jury,
and that such mere "*exposure*" affects the degree of liabil-
ity. The contract says: "If the assured is injured in any
occupation or exposure *classified by the association as more
hazardous* than that here given, his insurance and weekly
indemnity shall only be so much as the premiums paid by
him will purchase at the rates fixed for such increased haz-
ard." By the scheme of insurance under which the contract
in question was made, *acts and exposures were not classified;
occupations were*. The term "exposure" does not appear,
on that account, to have any particular legal significance, if
any. The classification was solely of *occupations*. The
question here presented has been repeatedly before the courts,
and it has been uniformly held that a particular exposure
under such a contract of insurance, though not in pursuit of,
and as a part of, the business or occupation mentioned in the
certificate, is not material to affect the liability of the as-
surer. In *Miller v. Travelers' Ins. Co.* 39 Minn. 548, the
assured was named in the certificate as a banker, which was
one of the least hazardous of occupations. He was injured
when carelessly endeavoring to board a railroad train. The
policy contained a provision to the effect that, in case of an
injury to the insured from any occupation or exposure clas-
sified by the company as more hazardous than that stated

in the policy, the indemnity rating should be correspondingly reduced. The court held that the words "occupation" or "exposure" referred exclusively to classified occupations, and that the mere act of the assured in exposing himself to an increased hazard, not in an occupation or business, did not affect the liability of the company. To the same effect are *Hall v. Am. M. Acc. Asso.* 86 Wis. 518; *North Am. L. & Acc. Ins. Co. v. Burroughs*, 69 Pa. St. 43; *Stone's Adm'r v. U. S. Casualty Co.* 34 N. J. Law, 375; *Union Mut. Acc. Asso. v. Frohard*, 134 Ill. 228; Niblack, Ben. Soc. & Acc. Ins. § 413. Such cases are distinguishable from those where the assured was temporarily actually engaged in a more hazardous business than the one designated in his certificate, as in *Aldrich v. Mercantile M. Acc. Asso.* 149 Mass. 457; also from those where the contract, in effect, provided that the doing of an act *pertaining to an occupation more hazardous* should reduce the liability of the assurer to the indemnity corresponding to such more hazardous occupation. *Eggenberger v. Guarantee M. Acc. Asso.* 41 Fed. Rep. 172.

The most serious question in this case is whether, upon the verdict and the undisputed evidence, the plaintiff was entitled to a judgment of $3,000. To determine such question we must necessarily look to the contract, and see what that was at the time the deceased was injured. That seems to have been lost sight of in the court below, or, otherwise, that the contract was construed to provide that the indemnity should be determined by the occupation of the assured at the time of the injury, whether classified as more or less hazardous than that named in the certificate. It is quite clear that the appellant's scheme of insurance contemplated, as to each certificate holder, a contract locating such certificate holder in a particular class, and specifying, as nearly as practicable, his actual occupation; not necessarily an occupation corresponding exactly to a classified risk. In the absence of any change of occupation to one classified as

more hazardous than the one *classified by the certificate*, the class named therein, not the occupation, governs the indemnity rating. The occupation becomes significant only in case of a change to one *classified as more hazardous than that named in the certificate, or classified thereby*. The happening of such an event, without any other act on the part of the assured, or modification of the written contract, changes his location from the higher to the lower class. Whether the occupation named in the contract, and therein placed in a particular class, corresponds substantially with an occupation classified by the rules of the company or not, any change to one not so classified, and as more hazardous, does not affect the liability of the assurer. The clause of the contract in that regard is self-acting in respect to the assurer in one direction only. It may locate the assured, by reason of his conduct alone, in a lower class than the one named in the certificate, but not in a higher. So the important question is, In what class was the assured, by his contract, at the time of his injury? To determine that, reference must be had to what passed between the association and the deceased, after the certificate was changed from class 1 to class 2.

It is our opinion that the letter of the assured of April 30, 1892, notifying the company that he had changed his occupation from that of mill owner, overseeing only, to mill owner, etc., occupation salesman and supervisor of yard and mill, with occasional duties to operate machines in the factory for an hour or two at a time, and the reply to such communication, sent by the association to the assured May 9, 1892, that he had been changed from class 2 to class 3, occupation salesman and general supervisor of lumber mill and yard, not working, as effectually modified the contract as if the change had been actually written into the certificate. The notification given to the association, and the reply thereto, together with the certificate, became the con-

tract, and so continued down to the time of the accident, and was binding between the parties to fix the amount of indemnity in the absence of proof of a change of occupation so as to reduce the assured to a lower class than class 3. Therefore, notwithstanding the verdict, and taking all the facts as found by the jury to be verities in the case, they did not change the written contract, which indisputably entitled plaintiff to $2,000 only. The fact that by the contract the deceased was in class 3 being established by undisputed evidence, for the purposes of this appeal such fact must be treated as if actually incorporated in the special verdict. *Murphey v. Weil*, 89 Wis. 146. So the verdict stands, in effect, thus: The deceased, when injured, was insured by the terms of the written contract in class 3; death indemnity, $2,000. His actual occupation, when injured, was that of mill owner, overseeing only. It was not an occupation classified as more hazardous than that named in the certificate.

It follows from what has preceded that the verdict of the jury is not sufficient to sustain the judgment rendered. Hence such judgment must be reversed, and the cause remanded for a new trial, unless the plaintiff elects to take judgment for $2,000, with interest and costs.

*By the Court.*— So ordered.