ETTA TAYLOR, APPELLEE, v. ILLINOIS COMMERCIAL MEN'S ASSOCIATION, APPELLANT.

FILED JUNE 25, 1909.    No. 15,575.

1. Insurance: PROCESS: PLEADING: BURDEN OF PROOF. If an incorporated foreign insurance company, as a defense in an action upon one of its policies, pleads that the return of the sheriff that he served process upon its agent is false, for the reason that the person named was not and is not its agent, and plaintiff in her reply denies those allegations, the burden is on defendant to negative the agency of the individual upon whom the process was served.

2. ———: ———: EVIDENCE. Defendant's evidence negatived the fact that it had agents in Nebraska for specific purposes, but did not deny that the individual designated in the sheriff's return as its agent had not performed such acts as under section 6407, Ann. St. 1907, would constitute him its agent. The court, therefore, did not err in not submitting said defense to the jury.

3. ———: CHANGE OF OCCUPATION. The policy provided that if the assured changed his business or vocation, he must immediately send the secretary of the company written notice of said fact, and that, unless the board of directors consented to such change, the policy upon the tenth day thereafter should cease and determine. Held, That the change referred to meant the substitution of one business or vocation for the other, as the usual business or vocation of the assured, and did not refer to a casual or incidental resort to other activities for 30 days, where the vocation described in the policy was not abandoned, and it was undisputed that the assured expected within a few days to continue his usual vocation.

APPEAL from the district court for Colfax county: JAMES G. REEDER, JUDGE. Affirmed.

*John J. Sullivan* and *James Maher,* for appellant.

*C. J. Phelps* and *H. P. Peterson, contra.*

Root, J.

Action upon an accident insurance policy. Plaintiff prevailed, and defendant appeals. In May, 1906, defendant issued an accident insurance policy on the life of Breffelt F. Taylor, and plaintiff is the beneficiary in said policy. On the 6th of August, 1906, the assured died as a result of injuries inflicted by a stroke of lightning.

1. Defendant is an incorporated foreign insurance company, and alleges that process was not served upon its agent. Plaintiff resided in Colfax county, and, upon defendant's refusal to pay the insurance claimed by her, a cause of action, if any existed, arose in that county. In accord with section 59 of the code the proper venue in Nebraska for this action was Colfax county. *Nebraska Mutual Hail Ins. Co. v. Meyers,* 66 Neb. 657. Defendant alleged "that the sheriff's return to the effect that the summons in this action was served upon defendant by delivering a copy thereof to its agent, Leonard P. Bauderman, in Colfax county, Nebraska, is a false return and confers upon this court no jurisdiction," etc. It is further alleged that Bauderman is not and never was defendant's agent for any purpose. Plaintiff's reply traverses those allegations. The pleadings thereby presented for the jury's consideration the issue of Bauderman's agency. The burden was upon defendant to negative the return of the sheriff, and its counsel evidently so understood, because he demanded, and over plaintiff's objection was given, the opening and closing in the trial of the case. Neither the summons nor the return thereto appears in the bill of exceptions. All defendant's evidence to rebut the sheriff's return may be found in defendant's by-laws, one question propounded to its secretary, and his answer thereto. The by-laws provide

that defendant's business shall be transacted in Chicago, but do not forbid its officers appointing agents. In fact, without such representatives, defendant's business would languish and the object for which it was created would be defeated. The secretary was asked: "Q. Has the Illinois Commercial Men's Association any agents, general, special, or of any kind, empowered to solicit insurance for it, to accept members for it, or to receive assessments and dues for it?" He answered: "It has not. All its business must be transacted at its offices in Chicago, Illinois." This testimony is insufficient to exculpate defendant. It attempts to negative Bauderman's agency for specific purposes; that is, that he did not have authority to solicit insurance, accept members, or receive assessments for it. The secretary did not state that Bauderman had not performed any of those acts in Colfax county for defendant, nor that, if he had attempted to do so, it had rejected the fruits of his labors. The secretary testified to his conclusions. Just what facts would constitute Bauderman defendant's agent according to the logic of the witness we do not know. Section 6407, Ann. St. 1907, provides: "Any person or firm in this state who shall receive or receipt for any money on account of or for any contract of insurance made by him or them, or for any such insurance company or individual aforesaid, or who shall receive or receipt for money from other persons to be transmitted to any such company or individual aforesaid, for a policy or policies of insurance or any renewal thereof, although such policy or policies of insurance may not be signed by him or them, as agent or agents of such company, or who shall in anywise, directly or indirectly, make or cause to be made any contract or contracts of insurance, for or on account of such company aforesaid, shall be deemed, to all intents and purposes, an agent or agents of such company, and shall be subject and liable to all the provisions of this chapter." The record is barren of

evidence to demonstrate that within the meaning of the
law Bauderman was not the agent of defendant in Col-
fax county at the time the sheriff served process in this
action upon him. The defense is technical, and should
not be held sufficient unless it responds to every fact
essential to establish the immunity sought. Defendant
is in the attitude of collecting premiums from the resi-
dents of Nebraska, and denying to the courts of this
state the right to protect its citizens and enforce defend-
ant's contracts, and its defense to the jurisdiction of the
district court will not be supported by intendment. In
the state of the record, we hold that the trial court was
right in not submitting the first defense to the jury.

2. The defense upon the merits is that Taylor, in order
to induce defendant to issue the policy in suit, made
the following warranty and promise in his application
for insurance: "I understand that if I shall hereafter
change my business or vocation from that herein stated,
that I must immediately notify the secretary of the
association of such change, as provided in article II, sec-
tion 7 of by-laws." The by-law is as follows: "When-
ever any member of this association shall change his
business or vocation he shall immediately thereafter send
to the secretary a written notice of such change, and
the association shall, at its discretion, continue or cancel
the membership of such new member, and his member-
ship shall cease and determine on the tenth day after
such change without action of the board of directors,
unless he shall in the meantime have sent such written
notice." Defendant alleges that, when said policy was
issued, Taylor's business or vocation was that of a com-
mercial traveler, and he was not engaged in any other
business or vocation; that for more than 30 days pre-
ceding his death he had entirely and permanently aban-
doned his said business or vocation, and, when injured,
was engaged exclusively in the business or vocation of
a carpenter; that notice was never given defendant by
any one of such change, and that neither defendant nor

any of its officers had knowledge thereof or consented thereto. The policy was in force at the time Taylor died unless forfeited by reason of his unauthorized change of business or vocation. It is unnecessary to cite authorities to sustain the proposition that the defense interposed must fail unless the facts bring the case within the strict letter of the contract upon this point, but that, if by any reasonable construction of the contract and application of the facts thereto the policy can be held valid, such construction should be adopted and application made. On the other hand, if defendant has established its defense, it should, and will, be given the benefit thereof.

There is but little, if any, conflict in the evidence. At the time the policy was issued and until he died Taylor's home was in Schuyler, Nebraska, and he was in the employ of the Money Weight Scale Company as a traveling salesman selling computing scales on commission. In his application for the policy in suit Taylor gave his vocation as a traveling salesman, and stated that he devoted twelve months in the year to said business. About July 3, while following that vocation, he met Mr. Morey, an old acquaintance, in Crawford, Nebraska. Morey was foreman in charge of the construction of several buildings in said city, and desired to employ carpenters to assist him in said work. Taylor was a carpenter by trade, and told Morey that "the scale business did not pay, and he wanted a job to make a raise for a few days; then he was going back to the road to try it again." Thereupon Morey induced Taylor to work as a carpenter on said buildings. Taylor stored his sample cases in the hotel in Crawford, and borrowed some tools and worked with them until he sent for and received his own tools. It is claimed by defendant that Taylor worked continuously as a carpenter from July 3 until his death, August 6, but this is not accurate. Marshall, the employer, states that between July 7 and July 14 Taylor worked but three days and eight hours, leaving at least three days during which T.  lor's movements are not

accounted for. August 4 Taylor was about to quit said carpenter work, whereupon Marshall raised his wages and induced him to promise that he would remain for another week. Taylor stated that at the end of that time he would return to the road. August 6, just before a storm, Taylor sought shelter in an inclosed house, and was there killed by a stroke of lightning. Taylor had never resigned his employment with the scales company, and its manager testified that Taylor was in the company's employ at the time of his death. The question presented is whether within the meaning of the policy Taylor had changed his business or vocation ten days or more preceding his death.

Counsel for the respective parties cite with assurance *Union Mutual Accident Ass'n v. Frohard,* 134 Ill. 228. Plaintiff's counsel argue that we should accept the definition given by Judge Baker of "occupation" as "that which occupies or engages the time or attention, the principal business of one's life," and apply it to the instant case, whereas counsel for defendant reason that the opinion defines the word as "the vocation, profession, trade or calling in which the assured was engaged for *hire or profit,*" and that the determining fact in the instant case is that Taylor worked for wages. Most of the cited cases are based upon conditions providing that the assured shall not engage in any occupation more hazardous or different from the one described in his policy. In the instant case the condition is against a change of vocation. Now, a man may have more than one vocation and engage in an additional occupation without abandoning the one described in his policy, and, if he does so, he does not necessarily change his vocation, unless the one is substituted for the other. Defendant's by-laws contemplate that its policy holders may have more than one occupation. Membership is confined to traveling salesman, "provided he (the policy holder) is not also engaged in any other business more hazardous than the one named." In *Stone's Adm'rs v. United States Casualty Co.,* 34 N. J.

Law, 371, a school teacher out of employment was killed as a result of a fall from the second story of a barn which he was having built, and the court held that the words "changing his occupation" meant engaging in another employment as a usual business. In *Simmons v. Western Travelers Accident Ass'n*, 79 Neb. 20, the deceased had been out of employment as a traveling salesman for two years, and during that time had resided on his father's ranches in Texas. He had performed some service for said parent, but had not received wages, and it was held for that reason, and because he had written for the purpose of securing employment as a traveling salesman, that he had not changed his occupation within the meaning of his policy. If Taylor had performed the services of a carpenter as a matter of exercise or for the accommodation of a friend, the *Simmons* case would be squarely in point. It does not seem to us that the mere payment of compensation for the identical act that otherwise would not invalidate the policy can work so great a transformation in the rights of the parties as to forfeit the beneficiary's right to recover for her husband's death. That Taylor was working for wages was an important fact to be considered in connection with all other relevant evidence in establishing the vital and ultimate one—whether he had changed his vocation. Defendant concedes that such change must have been permanent by pleading that "he (Taylor) had entirely and permanently abandoned the business or vocation of commercial traveler, and had engaged in the business or vocation of a carpenter." The proof is clearly to the contrary, and the court correctly permitted the jury to find whether Taylor had resorted to carpenter work as his usual employment, or merely casually, and properly instructed them that, to change his vocation within the meaning of defendant's by-laws, Taylor must have abandoned the vocation of traveling salesman for that of a carpenter. The instruction did not, as counsel argue, permit a recovery based upon Taylor's secret intentions, because

the evidence is undisputed from his acts and declarations that he had not abandoned his employment as a traveling salesman, but expected to actively engage therein within a few days of the date of the accident, and that the carpenter work was a mere casual incident to his actual vocation. Had the jury found for defendant, we would not have disturbed their verdict, nor, on the other hand, will we vacate their finding upon the evidence before us.

3. The complaints made concerning the instructions other than the one referring to Taylor's change of vocation do not present serious questions. They have all been considered and must be resolved against defendant.

The judgment of the district court therefore is

AFFIRMED.