## GOTFREDSON v. GERMAN COMMERCIAL ACCIDENT CO.

(Circuit Court of Appeals, Sixth Circuit. December 11, 1914.)

No. 2496.

1. INSURANCE (§ 339*)—"OCCUPATION."

The term "occupation," as used in an application for accident insurance, is a very comprehensive one, and compasses the incidental as well as the main requirements of one's vocation, calling, or business, being defined by lexicographers to be that which occupies or engages the time and attention, and the principal business of one's life, vocation, employment, calling, or trade.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 879; Dec. Dig. § 339.*

For other definitions, see Words and Phrases, First and Second Series, Occupation.]

2. INSURANCE (§ 339*)—ACCIDENT POLICY—OCCUPATION—CASUAL ACTS AND EMERGENCIES.

Defendant having grouped its accident risks into five classes and fixed premiums and losses according to risks attending the occupations of the persons insured, decedent, whose occupation was described in his application as "proprietor of a trucking company, no manual labor," was assigned to the first class. The occupation of an elevator conductor was within the fifth class, bearing a relatively higher rate. The policy provided that if assured is injured after having changed his occupation to one more hazardous, or is injured while doing any act pertaining to any more hazardous occupation, the liability for any loss specified shall be such an amount as the premium paid by him will purchase at the rate fixed for the more hazardous occupation. Decedent, to get certain of his goods into a new location after the employés of the building had left for the day, himself started to operate the elevator. On the third trip the cable parted, and decedent received injuries, from which he died. *Held,*

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that the policy clause must in each instance be interpreted with reference to the particular occupation of the assured, and did not apply to a mere temporary or casual act, and it was error to charge, as a matter of law, that, assured having been injured while performing an act in a more hazardous occupation than that specified in the policy, his administrator could recover only the reduced indemnity.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 879; Dec. Dig. § 339.*]

3. INSURANCE (§ 146*)—POLICY—CONSTRUCTION.

Where the language of a policy is susceptible of two or more constructions, the court will construe it most strongly against the company.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 292, 294-298; Dec. Dig. § 146.*]

In Error to the District Court of the United States for the Eastern District of Michigan; Alexis C. Angell, Judge.

Action by Benjamin Gotfredson, as administrator of the estate of Carrie B. Reading, against the German Commercial Accident Company. Judgment for plaintiff for less than the relief demanded, and he brings error. Reversed, and new trial granted.

This was an action to recover $5,000 upon a policy of accident insurance. The policy was to continue for one year from February 7, 1907, and was issued by the Commercial Mutual Accident Company of Philadelphia in the name of Harvey J. Reading and for the benefit of Carrie Reading, his wife. It was kept alive by annual payments of premiums and renewals until February 7, 1910, and, under the last renewal, was in terms continued for the ensuing year; but meanwhile, February 7, 1909, all liability under the policy was assumed by the German Commercial Accident Company, defendant, which received the premiums and made the renewals for the last two years. Both of these companies were corporations organized under the laws of Pennsylvania and maintaining agencies in the city of Detroit, Mich. The present insurance was effected in that city, where Reading was living and engaged in business from the date of the policy until his death. The insured met with an accident June 1, 1910, and died within the next three days; his widow made and delivered proof of the death in July, but died in October; and thereupon Benjamin Gotfredson, plaintiff, was appointed and qualified as administrator of the estate of the beneficiary. The suit was brought in the circuit court of Wayne county, Mich., December 14, 1910, and was removed the following day to the court below, on the ground of diversity of citizenship. An amended petition was filed in April following, and under a plea of the general issue three defenses were noticed: (1) That there had been a breach of warranty as to the condition of health of the assured at the time of the last renewal; (2) that the accident was not the direct cause of the death, but was the result of a diseased condition of the heart; and (3) that recovery, if any, must be limited to $1,000, because the assured was doing an act outside of the occupation in which he was insured. The verdict was against defendant as to its first and second defenses, and the court charged the jury, as matter of law, that recovery in any event must under the third defense be limited to $1,000 and interest. The administrator prosecutes error. The parties are alluded to as they stood below.

J. W. Dohany, of Detroit, Mich., for plaintiff in error.
J. E. Moloney, of Detroit, Mich., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). The controlling feature of the case is whether the limitation placed

upon the amount of recovery involved merely a question of law for the court or also a question of fact for the jury. It was shown without objection and by undisputed testimony that defendant had grouped its risks into five classes, and fixed premiums and losses according to the risks attending the occupations of the persons insured. Reading's occupation belonged to the first class and bore an annual premium of $25 and an indemnity of $5,000, while the occupation of an elevator conductor was in the fifth class and bore a relatively higher, though undisclosed, premium and an indemnity of $1,000. In addition to the language used in defining Reading's occupation, the fifteenth clause of the policy provided generally that, if an assured should be injured while doing an act "pertaining to any more hazardous occupation," the liability of the insurer should be fixed with reference to the more hazardous occupation. The trial court submitted to the jury the questions arising under the first and second defenses only, and, believing that merely a question of law was involved under the third defense, instructed the jury that it could not in any event find more than $1,000 under this defense. If error was committed, it was in failing to submit to the jury also the question of fact arising under this defense. Among the representations of fact made by Reading in the application, and in terms warranted to be true at the date of the policy and its last renewal, were these:

"I am a member of the firm H. J. Reading Truck Co., * * * whose business is that of trucking. My occupation and duties are fully described as follows: Proprietor. No manual labor."

The evidence shows that Reading owned the business and conducted it under this firm name; and that the business was extensive—indeed, for a year prior to the accident it included transportation in Detroit for 2 railroads and 150 wholesale houses, and also the storage of general merchandise. A change in location of the offices and storage plant had been going on some two months, when, on the evening of the accident, some of the effects of the old offices were brought to the new place for storage. The evidence tends to show that three loads of such articles arrived at this place as early as 5 o'clock. The removal of two of the loads into the building was not completed until the usual closing hour of 5:30. When the men were ready to discharge the third load, it was discovered that the elevator conductor had gone for the day. Reading's attention was called to this, whereupon he undertook to operate the elevator. The work of removing the articles contained in the third load to and from the elevator, as far as they were so carried, was performed by laborers; Reading doing nothing but run the car. One trip was made with the elevator to the basement and another to a floor above, and the car in both instances was returned in safety; but when the third load reached the fifth floor the cable separated, the car fell, and Reading received the injuries from which he died.

It does not appear that Reading ever ran the elevator before; and the occasion for this act was the fact that the conductor left the building while the men were engaged in removing the articles. In view of the facts and circumstances of the case, was Reading's operation of the car merely a casual act and incident to the occupation in which he

was insured, or was the act to be ascribed to the occupation of the conductor of the elevator and Reading's indemnity reduced accordingly? Defendant's counsel say the act was "manual labor," performed in another and distinct occupation and more hazardous than the one described in the policy; and further that it was but one of a number of kindred acts Reading was accustomed to perform. It appears, for example, that he was in the habit of exercising superintendency over the business, over the change made in locations of the offices and storage plant—in a word, that he "bossed the operations of the business" —and, if we understand counsel, these acts are claimed to give color to the act which resulted in the insured's death. This does not, however, give effect to all the words that were used to define his occupation. He was engaged in the trucking business, and his "occupation" was described as "proprietor, no manual labor."

[1] The company's agent, who solicited and obtained the insurance, in substance testified that these were not the words of Reading, but that they were employed by the agent to describe Reading's occupation. To be sure, according to another portion of the application, Reading warranted these words "to be true and complete"; but aside from the rule that would require the policy to be interpreted strongly against the defendant, associating the words "trucking business" with the words "proprietor, no manual labor," and considering their apparent intent, it would seem that their natural and necessary meaning would include mere casual acts, even though the acts involve temporary manual labor. It must be kept in mind that these words were used to describe the occupation, the regular business, of the applicant. Occupation is a very comprehensive term. It compasses the incidental as well as the main requirements of one's vocation, calling, business. It is defined by lexicographers to be "that which occupies or engages the time and attention; the principal business of one's life; vocation; employment; calling; trade." And see Everson v. General Accid., etc., Assur. Corp., 202 Mass. 169, 175, 88 N. E. 658; Union Mutual Accident Ass'n v. Frohard, 134 Ill. 228, 234, 25 N. E. 642, 10 L. R. A. 383, 23 Am. St. Rep. 664.

[2] It is not too much to say that the parties here possessed the common knowledge that is derived from observation and experience respecting the occasional and unexpected necessities which exact of men, whose occupations are not regarded as comprising manual labor, the doing of an act which in a literal sense may be called manual labor. It is hardly conceivable that the policy would ever have been written and received upon any other understanding.

These views are re-enforced and made plain, when the assured's method of conducting and supervising his business is considered. His secretary and treasurer testified without contradiction:

"He (Reading) usually went around the city and looked after teams to be loaded at different business houses, hurry them out, getting them unloaded, and looking after the shipping clerks, getting them to get a hustle and get the teams under way. Then he would be called upon to go to the various railroads to look after the general superintendency of getting the business moving."

And in going from place to place to do these things "He drove around with a horse and buggy." Had he precluded himself from driving the horse attached to his buggy? In the event of a driver of one of his trucks having become suddenly ill, would the policy have forbidden the assured to drive the truck to his place of business? What he did here was, in the absence of the conductor, temporarily to drive the elevator at his place of business.

The position of defendant's counsel comes at last to the claim that, in order to have rendered the act in question permissible, the words describing the occupation of the assured, instead of being "proprietor, no manual labor," should have been "proprietor, occasional manual labor"; and, in support of this, resort is had to the fifteenth clause of the policy, which provides:

"If the assured is injured after having changed his occupation to one classified by the company as more hazardous than that herein stated, or is injured while doing any act or thing pertaining to any more hazardous occupation, the liability for any loss specified shall be such an amount as the premium paid by him will purchase at the rate fixed by this company for such more hazardous occupation."

If we are at all right in what we have already said in respect of the words "proprietor, no manual labor," it is clear that counsel's suggested change of one of the words would have wrought no material change in the true meaning of the phrase; and the effect sought to be ascribed to the fifteenth clause would have failed for the same reason. However, independently of this, it must be observed that the fifteenth clause in terms applies to injuries received "while doing any act or thing pertaining to any more hazardous occupation." The fifteenth clause must in each instance be interpreted with reference to the particular occupation of an assured. We have seen that the occupation in question was that of proprietor of a large commercial trucking business, and that it necessarily embraced occasional physical activities. Admittedly the business comprised departments, and consequently occupations subordinate to the occupation of the proprietor. The company had classified occupations and assigned this assured to one of its classes; and now to construe the fifteenth clause so as to preclude the insured from doing an isolated act, such as the one here involved, would in effect be to prevent an assured from incurring such dangers as are essentially incident to the whole business comprised in his occupation. It might well be conceded that in such circumstances an employé in a particular department, say an insured bookkeeper, could not rightfully have operated the elevator even in an emergency; but it would by no means follow that the managing proprietor could not have done so. Counsel concede, and rightly, that this clause is not applicable to an act done outside of the business, as, for example, on a hunting excursion resulting in an accident (Union Mutual Accident Ass'n v. Frohard, supra; Stone's Adm'r v. United States Casualty Co., 34 N. J. Law, 371, 373; N. A. Life & Accident Ins. Co. v. Burroughs, 69 Pa. 43, 53, 8 Am. Rep. 212; Nat. Accident Society of City of New York v. Taylor, 42 Ill. App: 97, 100, 102; Taylor v. Illinois Commercial Men's Ass'n, 84 Neb. 799, 802, 122 N. W. 41; Johnson v. London Guarantee & Accident Co., 115 Mich. 86, 90, 72 N. W. 1115, 40 L. R. A. 440,

69 Am. St. Rep. 549; Hess v. Masonic Mut. Accident Ass'n, 112 Mich. 196, 199, 70 N. W. 460, 40 L. R. A. 444); but the contention is that where the act done pertains to the business of the assured and to a more hazardous occupation therein, the indemnity must be reduced accordingly. We are not impressed with this difference. It does not amount to a valid distinction (see Standard Life & Accident Ins. Co. v. Fraser, 76 Fed. 705, 708, 709, 22 C. C. A. 499 [C. C. A. 9th Cir.], where the occupation described in the application was: "Proprietor of a bar and billiard room, not tending bar"; Neafie v. Man'f'rs' Accident Indemnity Co., 55 Hun, 111, 113, 8 N. Y. Supp. 202; Fox v. Masons' Fraternal Acc. Ass'n of America, 96 Wis. 390, 397, 71 N. W. 363; Hall v. American Masonic Accident Ass'n, 86 Wis. 518, 524, 57 N. W. 366).

[3] It results that unless the policy is open to the interpretation we have indicated, it is contradictory in itself; at least its language, when taken as a whole, is ambiguous in the sense that it is susceptible of two or more constructions; and it is settled that the rule of interpretation in respect of policies of this character is to "construe all language used to limit the liability of the company strongly against the company." Manufacturers Accident Indemnity Co. v. Dorgan, 58 Fed. 945, 956, 7 C. C. A. 581, 22 L. R. A. 620 (C. C. A. 6th Cir.); Travelers' Ins. Co. v. Randolph, 78 Fed. 754, 761, 762, 24 C. C. A. 305 (C. C. A. 6th Cir.); Accident Ins. Co. v. Crandal, 120 U. S. 527, 533, 7 Sup. Ct. 685, 30 L. Ed. 740; Travelers' Ins. Co. v. McConkey, 127 U. S. 661, 666, 8 Sup. Ct. 1360, 32 L. Ed. 308; Burkheiser v. Mutual Accid. Ass'n, 61 Fed. 816, 818, 10 C. C. A. 94, 26 L. R. A. 112 (C. C. A. 7th Cir.) and citations.

However, we think the evidence gives rise to questions of fact, which should have been submitted under appropriate instructions to the jury. There was error in assuming, as matter of law, that the mere performance of the act of temporarily running the elevator justified the practical assignment of the assured to a more hazardous occupation and the reduction of his indemnity accordingly. The facts and circumstances under which the act was brought about would naturally characterize it, and so open the case to legitimate inference as to the existence or not, for example, of an unforeseen necessity or emergency under which the elevator was operated. Indeed, the ultimate issue of fact might fairly be resolved under an inquiry whether the operation of the elevator by the assured was casual or habitual. If the former, the indemnity should be allowed as it was written; if the latter, the indemnity should be limited to that of a conductor of an elevator. The usual course is to submit such questions to the jury. Standard Life & Acc. Ins. Co. v. Fraser, supra, 76 Fed. 709, 22 C. C. A. 499 (C. C. A. 9th Cir.); Eggenberger v. Guarantee Mut. Accident Ass'n (C. C.) 41 Fed. 172, 173; Fox v. Masons' Fraternal Accident Association of America, supra, 96 Wis. 396, 71 N. W. 363; Everson v. General Accid., etc., Assur. Corp., supra, 202 Mass. 174, 175, 88 N. E. 658; Simmons v. Western Travelers' Accident Ass'n, 79 Neb. 20, 26, 112 N. W. 365; Taylor v. Illinois Commercial Men's Ass'n, supra, 84 Neb. 805, 122 N. W. 41.

The judgment must be reversed, with costs, and a new trial awarded.