STACHE and others vs. THE ST. PAUL FIRE AND MARINE INSURANCE COMPANY.

*March 13 — March 30, 1880.*

INSURANCE AGAINST FIRE: Agreement of compromise after loss. *(1) Defenses against such agreement. (2) Burden of proof. (3)* SPECIAL VERDICT: FRAUD. *Findings not inconsistent.*

1. Where, after a loss by fire of insured property, and after an opportunity to investigate it, the insurer, without any deception or fraud practiced upon it by the insured at the time of such investigation, agrees with the insured that it shall pay and he receive a certain sum in full on account of such loss, a recovery of that sum cannot be defeated by showing a breach of a warranty in the policy, though unknown to the insurer at the time of such agreement.

2. The *property insured* consisted of two buildings, together with furniture and wearing apparel, provisions, etc., and the buildings were erected by the insured upon a lot held by him on a lease for ten years. The answer avers that the insured, in making out his proofs of loss, falsely and fraudulently, with intent to mislead and to induce defendant to agree to pay, etc., stated that the *property insured* was, at the time of

the fire, owned by him in fee simple. *Held*, that, in view of the settlement made, the burden was upon defendant to show that the assured had not an absolute title to the *property insured*, and that he had procured the settlement by false and fraudulent representations on that subject.

3. The jury found that the insured was not guilty of any fraud in making or inducing the settlement; but also found that when the proofs of loss were made out (by the insurer's adjusting agent), the insured, who could not speak English, in answering questions through an interpreter, had stated that "the property" belonged to him, "owned in fee simple." *Held*, that these findings were not inconsistent, and that plaintiffs were entitled to judgment thereon for the amount agreed upon by the settlement.

APPEAL from the Circuit Court for *Brown* County.

The case is thus stated by Mr. Justice TAYLOR:

"This was an action upon a policy of insurance against loss by fire. The property insured was described in the policy as follows: '$800 on his two-story building, occupied as an hotel; $260 on household furniture and wearing apparel; $75 on his provisions and stock of liquors and cigars; $65 on his bar fixtures and furniture, counter, stoves and lamps; $130 on his frame barn; $20 on hay therein.'

"After the policy was issued, an additional insurance was granted for $400 upon an addition built to the house. The policy provided that in case of loss the insurance money should be payable to *Duchateau & Bros.*, as their interest might appear. The policy was first issued October 2, 1875, and renewed for one year October 2, 1876. The additional insurance for $400 was granted June 11, 1877, and the loss occurred June 13, 1877. The property above described as insured by said policy is alleged in the complaint to have been also described in said policy as situated in the town of Red River, section 18, range 23, Kewaunee county, Wisconsin. The answer admits the making of the policy as alleged in the complaint; and, as the policy is not made a part of the bill of exceptions, there is no evidence that any more particular

description of the locality of the insured property was contained therein.

"The defense to the action was: *first*, that the insured had, in his application for insurance, falsely stated that his title to the lands upon which the house and barn were situated was a title in fee, when the fact was that he held the possession of the lands by a lease for ten years; and *second*, 'that in making out his proofs of loss the plaintiff *Stache* falsely and fraudulently represented and alleged, with intent to mislead the defendant and induce it to pay the loss, *that the property insured was at the time of said fire mentioned in the complaint still owned by him in fee simple*, and such false statement was, on the 23d day of June, 1877, sworn to by the said *Stache* and delivered to the defendant thus sworn to.'

"The evidence shows that after the fire the adjuster of losses for the defendant company came on for the purpose of investigating and adjusting the loss, visited the location of the insured property for the purpose of ascertaining the extent and fairness of the loss, and then returned to Green Bay, where he adjusted the loss with the plaintiffs. On his return to Green Bay after visiting the locality of the insured property, he stated to the local agent of the company that he thought it was a fraud; but notwithstanding this he then made an agreement with the plaintiffs that the loss should be adjusted at $1,306.92, to be paid in sixty days; and although the plaintiffs claimed the loss to be greater, they agreed to take that sum in full and surrender the policy on payment of the same. At the same time proofs of loss were made out and sworn to by the plaintiff *Stache*.

"The evidence further shows, and the jury find, that the plaintiff *Stache* erected all the buildings insured after he went into possession under his lease. The evidence also shows, and the jury find, that the *Duchateaus'* interest in the insured property was two chattel mortgages: one dated July 15, 1875, to secure the payment of $338, with interest at ten per cent.,

and one dated February 27, 1875, to secure $400, with interest at ten per cent. The first of said mortgages was upon the household furniture and fixtures, and the second upon the insured house and barn, and they are described as situate on lot 1, sec. 18, town 25, range 23. The mortgages were duly filed in the office of the proper town clerk, and had been renewed February 27, 1877."

The jury returned a special verdict, the material parts of which are stated in the opinion. Both parties moved for judgment on the verdict; and the court ordered judgment in favor of the defendant. A subsequent motion by the plaintiffs, based on the judge's minutes, for a new trial, was denied; and plaintiffs appealed from the judgment in defendant's favor.

The cause was submitted on the brief of *J. C. & A. C. Neville* for the appellants, and that of *Hastings & Greene* for the respondent.

TAYLOR, J. In the state of the case shown by the foregoing statement, it may be a question of some doubt whether either party can go behind the special verdict and allege errors arising upon exceptions taken on the trial, or look into the bill of exceptions for the purpose of ascertaining whether the findings are sustained by the evidence; but as we are of the opinion that the learned circuit judge erred in ordering judgment for the defendant upon the facts found by the special verdict, it will not be necessary to determine that question.

We have stated some of the evidence given on the trial, for the purpose of more fully understanding the scope and meaning of some of the most material facts stated in the special verdict, and not with the intention of reviewing any of the findings of the jury. The only findings which are necessary to be considered for the purpose of determining in whose favor judgment should be rendered, and as to the effect of which there is any dispute, are the following:

" 6. That said application, in addition to other statements

as to the location and description of the premises to be insured, in answer to the question, 'If the survey for insurance is on building, state if the same is situated on ground held by you in fee simple, or on a lease; if on a lease, when will the lease expire?' stated 'Fee simple;' and said application further stated that the applicant's title to the property to be insured was absolute.   *A.* We, the jury, so find.

"7. That said application also contained this clause:   'And the said applicant hereby covenants and agrees to and with the said company that the foregoing is a just, full and true exposition of all the facts and circumstances in regard to the condition, situation, value and risk of the property to be insured, so far as the same are known to the applicant and are material to the risk; and said answers are considered the basis on which insurance is to be effected, and the same is understood as incorporated in and forming a part and parcel of the policy;' which said clause was at the end of said application and after said statement mentioned in finding six hereof.   *A.* We, the jury, so find.

"11. That in and by said proofs, sworn to by the plaintiff *Stache*, in answer to the question, 'If real estate, whether it is owned in fee simple or held on lease?' the said *Stache* stated that the property belonged to deponent, owned in fee simple. *A.* We, the jury, so find.

"12. That at the time said application was made and policy issued, the only interest that the plaintiff had in the land on which the buildings insured were located, was under a lease from one Antoine Recard, for a period of ten years from May 19, 1874.   *A.* We, the jury, so find.

"16. That at the time said proofs of loss were made, the adjuster said that, at the expiration of sixty days from such time, the amount of the loss, $1,306.92, would be paid through the local agent on the surrender of the policy, and the plaintiff *A. C. Duchateau* said, 'All right; that is satisfactory.'   *A.* We, the jury, so find.

"17. That at the time at which said proofs of loss were made, and said statement made by said adjuster, Kibbie, he did not know the condition of the title to the land on which the buildings insured were situated. *A.* We, the jury, so find.

"18. Was the agreement (if any) to pay in sixty days on surrender of the policy made after the proofs were made out? *A.* Yes.

"19. Did the plaintiff *Duchateau* interpret to the plaintiff *Stache* the questions put to him by the adjuster, Kibbie, in making out the proofs of loss? *A.* Yes.

"20. Did the plaintiff *Stache* and others claim more for their loss than $1,306.92? *A.* Yes.

"21. Did the plaintiffs and defendant, on June 23, 1877, finally agree upon and settle the claim of the plaintiffs for $1,306.92? *A.* Yes.

"22. Did the insurance company promise and agree with the plaintiffs to pay said sum of $1,306.92 at the end of sixty days from June 23, 1877? *A.* Yes.

"23. Did the plaintiff *Stache*, through *A. C. Duchateau* or *Duchateau Bros.*, at the same time agree that upon payment of said $1,306.92 in sixty days they would give up all further claim under the policy and surrender the policy to the insurance company? *A.* Yes.

"24. If you answer 'Yes' to the above question, was such settlement understood to be a final settlement and compromise of plaintiffs' claim under the policy? *A.* Yes.

"25. If you find there was a settlement, were the plaintiffs *Stache* or *Duchateau* guilty of any fraud in making or inducing such settlement? *A.* No.

"26. Before making out any proofs of loss or settlement, did the defendant's agent, Kibbie, go down to the premises burned? *A.* Yes.

"27. Did Kibbie write up the proofs of loss himself? *A.* Yes.

"28. Did said Kibbie, before any settlement was made, have

full time to investigate and find out plaintiff *Stache's* title to the land and property destroyed?  *A.* Yes.

"29. Did Kibbie say to Mr. Benson, before any settlement was made, that he thought plaintiffs' claim a fraud?  *A.* No.

"30. Can the plaintiff *Stache* speak, write or understand the English language?  *A.* No."

Upon the facts found, it is settled that, after the loss occurred, and after the authorized adjuster of the defendant had investigated the loss, an agreement was entered into by the defendant and the plaintiffs, that the defendant should and would pay the assured the sum of $1,306.92 at the end of sixty days, and the plaintiffs would accept such sum in full payment and satisfaction of such loss. The findings also show that the plaintiffs claimed that their loss exceeded the sum agreed to be paid, and that the final agreement to pay such sum of $1,306.92 was an amicable compromise of the differences between the parties. It is not claimed by the learned counsel for the respondents, that this agreement to pay the $1,306.92 is not binding upon the defendant, in the absence of any mistake or fraud in the settlement; but it is alleged that the defendant may avoid it upon two grounds: *first*, that the findings show that there was a breach of warranty of one of the conditions of the policy, in this, that the insured had falsely represented that he was the owner in fee of the lands upon which the insured buildings stood, when in fact he had only a leasehold interest in such lands, and that such breach of warranty was not known to the defendant company at the time the agreement to compromise and pay the said sum of $1,306.92 was entered into; *second*, that the insured made false statements in his proofs of loss for the purpose of inducing the defendant to compromise and pay the claim, or some part of it, and that such false statements did induce the defendant to make the agreement to pay the said sum of $1,306.92.

Upon the first point we think the authorities are clear that

the company cannot avail itself of any breach of warranty in the policy to defeat a recovery upon an agreement to pay the loss, made after the loss has occurred, and after the company has had an opportunity to investigate the facts and circumstances affecting the fairness of the loss, without any interference, deception or fraud practiced by the insured at the time of such investigation; and that this is especially so when the agreement is a compromise of the claim at a less amount than the insured claims as his true loss. " This position is fully sustained by the following authorities, cited by the learned counsel for the plaintiffs: *Smith v. Glen Falls Ins. Co.*, 62 N. Y., 85; *National Life Ins. Co. v. Ninch*, 53 N. Y., 144; *Lapeyre v. Thompson*, 7 La. An., 218; *Metropolitan Ins. Co. v. Harper*, U. S. Circuit Court, W. D. Virginia, 5 Rep., 490; *Ins. Co. v. Chestnut*, 50 Ill., 111. The following authorities hold the same doctrine: *Ins. Co. v. Wager*, 27 Barb. (N. Y.), 354; *Bilbie v. Lumley*, 2 East, 469; Angell on Life and Fire Ins., § 409; May on Ins., § 575.

The case of *Smith v. Ins. Co.*, 62 N. Y., 85, was a case similar in all respects to the case at bar, and Chief Justice CHURCH, who delivered the unanimous opinion of the court, in passing upon the question as to how far the company waives a breach of warranty contained in the policy by an agreement to pay a specified sum after the loss occurs, says: "The settlement and contract to pay a specified sum operates as a waiver of any warranty in the policy, unless the settlement and contract were procured by the fraud of the assured; and this is not found, and scarcely claimed. It is said that the company did not know of the breach of the warranty at the time of the settlement. The answer is, that when the claim was made for the loss the company was required to ascertain the facts as to any breach of warranty. If it saw fit to pay the claim, or compromise it, or to make a new contract without such examination, it must be deemed to have waived it, and in the absence of fraud it cannot afterwards

avail itself of such breach. It cannot urge payment or settlement by mistake on account of want of knowledge of such breach. The time for investigation as to breaches of warranty is when a claim is made of payment; and if the company elects to pay the claim, or, what is equivalent, to adjust it by an independent contract, it cannot afterwards, in the absence of fraud, retract or fall back upon an alleged breach of warranty."

Without attempting to enlarge upon or add to the argument of the learned chief justice, above quoted, we content ourselves with the statement that we approve the doctrine of that opinion. It is evident that the public good is promoted by the settlement and compromise, by the parties themselves, of their differences, without resort to litigation; and when such settlements are entered into without-fraud practiced by either party to bring about such settlement, all questions as to the legal obligation of the party promising to pay by the terms of such settlement, growing out of the terms and conditions of the original contract upon which the one party bases his claim and the other party disputes it, must be considered waived by the new agreement adjusting and compromising such claim.

The only other question presented by the pleadings and special verdict is, "Were the plaintiffs guilty of any fraudulent practice pending the settlement, and by which the defendant was induced to make the compromise and promise to pay?" The jury find expressly "that the plaintiffs were not guilty of any fraud in making or-inducing such settlement." See 25th finding. It is, however, insisted by the learned counsel for the respondent, that this finding is of no avail against the other finding, No. 11, where the jury find that the plaintiff *Stache*, in making his proofs of loss, stated, in answering the questions about the loss, to the question, "if real estate, whether it is owned in fee simple or held on lease," "that the property belonged to deponent, owned in fee sim-

ple." It is said that this finding shows that *Stache* made a false statement as to the ownership of the property insured, at the time of the loss, and that this false statement was a fraud in law which destroyed the force of the other finding that there was no fraud in making or inducing the final settlement. We think the learned circuit judge, as well as the counsel for the respondent, are entirely mistaken as to the force of this finding: *first*, because the jury have not found, as a fact, that *Stache* did not, at the time of the loss, own the land in fee upon which the insured property was situated; *second*, because if the respondent be permitted to look into the evidence for the purpose of showing that *Stache* did not, at the time of the loss, own the lands in fee upon which the insured property was located, and so claim to make out the falsity of his statement, still the jury have not found as a fact that this false statement, if it be one, was made for the purpose of inducing the defendant to settle or compromise their claim, nor that he was induced to make such compromise and settlement by reason of such alleged false statement, but have found affirmatively that it was not made by plaintiffs fraudulently for the purpose of inducing the settlement, by their 25th finding above quoted; and *third*, because the issue upon this question, as made by the answer, was not upon the ownership of the lands upon which the insured property was located, but upon the ownership of the insured property itself.

The allegations in the answer upon this point are: "That, in making out his pretended proofs of loss, the said *Joseph Stache* falsely and fraudulently represented and alleged, with intent to mislead the defendant and induce it to pay or agree to pay said loss, *that the property insured was, at the time of said fire mentioned in the complaint, still owned by him in fee simple;* and such false statement was, on the 23d day of June, 1877, sworn to by said *Stache,* and delivered to the defendant, thus sworn to." The answer does not allege that

there was any false statement made as to the ownership of the lands upon which the insured property was located, for the purpose of inducing a settlement of the loss, but a false statement as to the ownership of the insured property itself. It is also evident, from the allegations of the answer, that the company make a distinction between the title of the house and barn insured and the title to the land upon which the insured house and barn are situated, from the fact that it is also alleged in the defendant's answer that the plaintiff *Stache*, in his application for insurance, " stated that his title to the insured premises was absolute, *and that the buildings insured were situated on ground held by said Stache in fee simple.*"

The complaint made by the defendant was, that plaintiffs had falsely stated their title to the property insured, not to the land upon which it stood. The jury, in their fourteenth finding of fact, find that the insured buildings were built by *Stache* after he obtained a lease of the lands on which the same were situated. There is no proof or finding tending to show that he was not the sole and absolute owner of the insured premises, within the meaning of the policy. The fact that the *Duchateaus* had mortgages on the property did not affect his ownership, nor did it constitute any fraud upon the defendant, as it is evident that the defendant had knowledge of the existence of these mortgages at the time the policy was issued and renewed, as the policy itself made the loss payable to them as their interest should appear. The compromise and promise to pay by the defendant relieved the plaintiffs from making proof of the ownership of the insured property, and, under the pleadings in the case, cast the burden upon the defendant of showing that the plaintiffs' title was imperfect, and that, by their false and fraudulent representations as to their title, they imposed upon the defendant and induced it to make the compromise and settlement.

In order to entitle the defendant to judgment in its favor

upon this issue, it was necessary for it to show that the plaintiffs had not an absolute title to the insured property at the time of the loss; that they, or some one of them, knowingly, falsely and fraudulently asserted, at the time of making the settlement, and for the purpose of inducing the defendant to make the same, that they had a perfect title; that the defendant, relying upon such false assertion of title, was in fact induced to make the settlement alleged to have been made; and that it would not have made such settlement if such false representations had not been made. See *Mutual Fire Ins. Co. v. Sturgis*, 13 Gray, 177–180; *Ins. Co. v. Matthews*, 102 Mass., 221.

The findings in the special verdict do not show any of the material facts necessary to be proved on the part of the defendant, in order to avoid the effect of its agreement to pay, and the plaintiffs' agreement to receive, the sum of $1,306.92, in full satisfaction and discharge of the plaintiffs' claim. If the answer of *Stache*, as set forth in the eleventh finding of fact, be construed to mean that he asserted that he had a title in fee to the lands upon which the insured buildings were situated, then the answer was immaterial under the issues in the case, as the defendant had not alleged, in his answer to the complaint, that he was misled or defrauded into making the settlement by any false representations as to the title to such lands; and if it be construed as an assertion that he had a perfect title to the property insured, there is no evidence or finding showing that such assertion was false. And if we look into the evidence, it will appear that such statement was true, except as qualified by the existence of the chattel mortgages thereon; and it is evident from the whole case that the defendant was not in any way misled by the fact of the existence of these mortgages.

On the whole, we think the findings in the special verdict do not establish satisfactorily any of the facts necessary to be established in order to relieve the defendant from its agree-

ment to settle and compromise the plaintiffs' claim, by the payment of the sum of $1,306.92, and that it was error to direct judgment thereon in its favor. We are also of the opinion that, upon the special verdict, judgment should have been entered in favor of the plaintiffs, upon their motion.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions to the circuit court to render judgment upon the verdict for the plaintiffs, for the sum of $1,306.92, with interest thereon from. the 23d day of August, 1877.