PACIFIC MUTUAL LIFE INSURANCE COMPANY v. EUGENE TERRY ET AL.

Decided December 21, 1904.

**1.—Insurance Policy—Breach of Warranty—Use of Intoxicating Liquors.**

A negative answer to the questions in an application for life insurance, "Do you use spirituous, vinous or malt liquors? Have you ever used them to excess?" did not amount to a denial that the applicant had ever drunk intoxicating liquor at all or occasionally to excess, but merely that he had never been addicted to the habit, the word "use" having the meaning of "habit," "practice," or "custom."

**2.—Same.**

Evidence considered and held not to conclusively show such habit, practice or custom in the use of intoxicating liquors as to avoid a policy of life insurance on the ground that the applicant gave negative answers to the inquiry whether he used intoxicating liquors.

Appeal from the District Court of Gregg. Tried below before Hon. Richard B. Levy.

*J. C. Rosenberger, McHaney, Lacy & Bramlette, Young & Stinchcomb* and *R. S. Gray,* for appellant.—1. The testimony in the case shows that at the time the assured made his application for insurance he was using spirituous, vinous and malt liquors, and his answer to the medical examiner, inserted in his application, that he did not use any of said liquors, was false and untrue in fact and avoided the policy. Brignac v. Pacific Ins. Co., 36 So. Rep., 595; Union Mut. Ins. Co. v. Reif, 38 Am. Rep., 613; Order of Columbus v. Fuqua, 60 S. W. Rep., 1020; Kansas Mut. Ins. Co. v. Pinson, 63 S. W. Rep., 531; Flippin v. State Life Ins. Co., 70 S. W. Rep., 787; Equitable Life Assur. So. v. Liddell, 74 S. W. Rep., 87; Mutual Life Ins. Co. v. Simpson, 28 S. W. Rep., 837; Mutual Life Ins. Co. v. Simpson, 31 S. W. Rep., 501; Hutchinson v. Hartford Life, etc., Ins., 39 S. W. Rep., 325; Central Mu-

tual, etc., Ins. Co. v. Parham, 16 S. W. Rep., 316; Fitzmaurice v. Mut. etc. Ins. Co., 19 S. W. Rep., 301; Mutual Life Ins. Co. v. Nichols, 24 S. W. Rep., 910; Bargard v. Farmers Mut. Ins. Co., 44 A. N. W., 856; Dues v. Supreme Council, 52 S. W. Rep., 109; 3 Joyce on Insurance, sec. 1944, 1962, 1964, 1974, 1970.

2. The first question propounded to the applicant with reference to his use of intoxicating liquors shows that it was the intention of the company to ascertain from him whether or not he ever drank spirituous, vinous or malt liquors, regardless of the amount. The testimony shows that he did drink such liquors prior to the time he made his application for insurance, but that he gave a negative answer to the question, therefore the policy was avoided and the plaintiffs were not entitled to recover. Union Mut. Ins. Co. v. Reif, 38 Am. Rep., 613; Mowry v. Home Ins. Co., 9 R. I., 346; Hutton v. Waterloo Ins. Co., 1 F. & F., 735; Mutual Ben. Ins. Co. v. Holterhaff, 2 Cin., 379.

3. The question propounded to applicant with regard to his excessive drinking shows that the company desired information as to his getting on sprees. The applicant had theretofore gotten on sprees of intoxication, but answered that he had never used any of such liquors to excess, thereby conveying the information to the insurer that he had never gotten on sprees, which was a misstatement and at least called for a submission of the issue to the jury under proper instructions. Insurance Co. v. Reif, 38 Am. Rep., 613.

*Duncan & Lasseter, Lit Terry* and *J. N. Campbell,* for appellees.— The defendant having failed to establish by a preponderance of the testimony that Dr. A. B. Terry, prior to his application for his insurance, used intoxicating liquors, that is to say, had formed the customary practice or habit of using intoxicating liquors, or had ever used them to excess, the jury were justified in finding that his warranties in that regard were true, and in returning a verdict for the plaintiffs. Life Assurance Association v. Liddell, 74 S. W. Rep., 87; Mut. Life Ins. Co. v. Simpson, 28 S. W. Rep., 337; Mut. Life Ins. Co. v. Simpson, 31 S. W. Rep., 501; Knickerbocker Ins. Co. v. Trefz, 104 U. S., 203 (L. C. Ed., 708); Conn. Mut. L. Ins. Co. v. U. T. Co. of New York, 112 U. S., 257 (L. C. Ed., 708); N. W. Mut. L. I. Co. v. Muskegon, etc., 122 U. S., 501 (L. C. Ed., 1100); Van Valkenburgh v. A. P. L. I. Co., 70 N. Y., 605.

GILL, ASSOCIATE JUSTICE.—On April 1, 1901, the appellant life insurance company insured the life of A. B. Terry for $2,000, the appellees being named in the policy as beneficiaries. On October 30, 1902, the insured died and appellees made proof of the death and demanded a settlement in accordance with the terms of the policy. Payment was refused on the ground that the insured in his application for insurance had falsely answered certain inquiries propounded by the company concerning his use of alcoholic liquors. Thereupon appellees brought this suit and the company interposed the alleged falsity of the answers as a defense.

A trial by jury resulted in a verdict and judgment in favor of ap-

pellees for the face of the policy, interest, statutory penalty and attorney's fees as prayed for.

The appellant seeks a reversal of the judgment upon several grounds, two of which we shall notice at length: First, that the undisputed evidence disclosed a breach of warranty in the respect complained of; second, the evidence at least presented the issue and the court erred in the manner of its submission to the jury.

The policy of insurance in question was issued upon the faith of certain answers of the assured to certain questions propounded to him in behalf of the company, the questions and answers being embodied in a written application for insurance which was referred to and made a part of the policy. The questions and answers at issue are as follows:

"Do you use spirituous, vinous or malt liquors?" "Have you ever used them to excess? (Give full particulars.)" To both these questions he answered "No" and warranted his answers to be true.

Under the contention that the answers were false appellant insists that the questions amounted to an inquiry whether insured had ever drunk intoxicating liquors at all, hence the negative answer was shown to be false by proof that he had drank intoxicating liquors, however slight the use was shown to have been. If this construction of the question is sound the judgment can not stand, as there is no question but that the assured had used intoxicants.

We are of opinion, however, that the questions can not be given that meaning. In the first place the company is insisting that a breach of warranty shall be allowed to defeat the policy without reference to the materiality or bearing upon the particular risk. The right to so insist is absolute, but in construing the language on which the forfeiture is claimed every reasonable intendment must be indulged in favor of the validity of the policy.

From this standpoint let us consider the meaning of the questions. The word "use" has a variety of definitions, among them being "habit," "practice," "custom." Cent. Dict. It is given this significance (among others) in common, everyday use. These meanings are not strained and unnatural. For instance a man might be asked, "Do you use tobacco?" and might truthfully answer "no," though he had just finished a cigar which he had smoked out of curiosity or for experiment. He might truthfully say he had never used tobacco, though on former occasions he had tasted it or been nauseated in an effort to acquire the habit. One might truly say he did not use morphine or cocaine though in the act of taking it to alleviate pain. He might say he had never used it, though on many occasions he had found it necessary to take it in emergencies. The truth is when inquiry is made as to the use of such things, "habit," "practice," "custom" is naturally suggested to the mind, and the most technical conscience would scarcely require the recital of a few isolated instances in which curiosity or necessity had resulted in a temporary resort to the drug or weed inquired about.

It is not unusual for insurance companies to inquire as to the use of tobacco, recognizing that its excessive use may result in serious detriment to health. It would be manifestly unreasonable to contend that a negative answer to an inquiry framed as the one in question directed

to the use of tobacco, would be shown to be false upon proof that a few times in his life the person addressed had chewed or smoked.

Such companies uniformly pursue the same course as to the use of alcoholic stimulants, but it is not even contended that they propose to insure only total abstainers, and an applicant may safely assume that he is not called upon to construe the question as if it read, "Did you ever take a drink in your life?" and to review his life and disclose the number so taken. Had the company desired such information it would have been easy to so frame the questions as to elicit such an answer. This view of such questions has been uniformly taken by the Texas courts, and it has been held that even occasional excesses do not amount to a breach of the warranty. Insurance Co. v. Liddell, 74 S. W. Rep., 87; Insurance Co. v. Simpson, 28 S. W. Rep., 837; Insurance Co. v. Trefz, 104 U. S., 203; Insurance Co. v. U. T. Co., 112 U. S., 257; Insurance Co. v. Muskegon Bank, 122 U. S., 501; Van Valkenburgh v. Insurance Co., 70 N. Y. 605.

These views find support in a general way in some of the cases cited by appellant. Brockway v. Insurance Co., 9 Fed. Rep., 252; Insurance Co. v. Muskegon Nat. Bank, 122 U. S., 501; Grand Lodge v. Belcham, 33 N. E. Rep., 886. In the last cited case the specific question was asked, "To what extent do you use alcoholic stimulants?" and it was held to refer to custom or habit. In the case of Insurance Company v. Liddell, 74 S. W. Rep., 87, while the questions were headed "Habits," one of the questions was, "Have you ever been a free drinker?" with inquiries as to how long, to what degree, extent of injury to health, etc., and it was held that occasional excesses not amounting to habit or practice did not render a general negative answer false.

In the case of Brignac v. Insurance Company, 36 So. Rep., 595, the Supreme Court of Louisiana construed a policy identical with the one in question. The applicant, however, instead of stopping with a negative answer to the two questions set out above, answered negatively the further question, "State the average quantity you use each day." The court first held unanimously that the questions were addressed to habit or practice and that the answers were not falsified by proof of occasional drinking or even occasional excesses. The court cited May on Insurance, pp. 379, 637, 638; the Standard Dict., defining the word "use"; Insurance Co. v. Reif, 38 Am. Rep., 613; Chambers v. Insurance Co., 64 Minn., 495. On motion for rehearing a majority of the court held that while the taking of an occasional drink would not have falsified the answers, the answers nevertheless meant more than an inquiry as to habit or custom in the respect inquired about, and that the answers were shown to be false by proof of occasional excesses, and that the negative answers to the three questions taken together amounted to a warranty that he was a total abstainer. They further held that the natural answer to the questions in view of the facts would have been "Take a drink occasionally," or "Sometimes drink to excess." The judge who rendered the opinion on the original hearing dissented. The majority opinion on the meaning of the questions is not supported by cited authority and in our judgment is illogical and inconsistent, and the court appears to have confused the inquiries as to the meaning of the questions with

. the fact inquiry as to whether the answers had been breached. For these reasons, at least, we are clear the authority should not control our conclusion in this case.

It is apparent that the inquiry as to the meaning of the questions propounded is entirely distinct from the inquiry as to the effect of the proof. In the case at hand the court might properly have instructed the jury that the word "use" meant custom, habit, practice, and the jury might properly have found upon the evidence that such a use had been shown. It follows that the issue was for the jury unless under the undisputed proof the court should have directed a verdict. Insurance Co. v. Muskegon Bank, supra. We will therefore discuss briefly the evidence upon the issue.

The assured had lived in Longview, Texas, from his early youth. On March 14, 1901, the date of his application for insurance, he was about 26 years old. He was killed by accident on October 30, 1902. Whatever the proof may disclose as to sobriety or intemperance, it is not contended that drink had anything to do with his death. He was a physician, and Dr. C. W. Lawrence, who examined him for insurance, had known him intimately all his life. He testified that he (the witness) ran a drugstore in Longview, and practiced medicine. That assured officed with witness awhile and over his drugstore afterwards. That in all his acquaintance with assured he had never seen him under the influence of intoxicants but once, and then only slightly when he had taken some to brace him up before an operation. That it seemed to take very little to affect him. This witness had never seen him drinking on any other occasion.

Dr. H. M. Lawrence was also an old acquaintance of assured, a physician in Longview, and in contact with him frequently. This witness attended the medical university with assured at New Orleans in the spring of 1901, just prior to the date of the application. He saw assured under the influence of liquor twice during Mardi Gras in that city, and not exceeding twice at any former time.

The agent of defendant who solicited the policy in question testified to an intimate acquaintance with assured for some time immediately preceding the date of the application and that he had never seen him under the influence of liquor. This witness recommended the settlement of this claim and was discharged by defendant therefor.

The prescription clerk in the drugstore of Dr. C. W. Lawrence testified that he had never seen assured drinking. The medical examination made in connection with the application for insurance disclosed a splendid physical condition, every vital organ of assured appearing to be normal and healthy. It thus appears that the testimony of these witnesses, his intimates, marks the assured as a temperate man for it is unlikely that the habitual use of liquor on his part or frequent sprees would have escaped their notice.

Opposed to this is the testimony of Dr. Cole, who places himself in a position to know, and who says the first time he ever saw assured drink was in 1898, after the death of his mother. This witness testified he saw assured intoxicated several times after his mother died, which was in August, 1898. Assured talked to witness about his moth-

er's death and witness advised assured against drinking, and assured said he would not drink to excess, but he saw the assured under the influence of liquor occasionally after that. Witness can not give dates.

Witness Knight saw assured intoxicated six or seven months after the death of his mother and saw him intoxicated again about eight months after he first saw him. After witness saw him the second time he never saw him drinking again until about thirteen months prior to his death. He was to be married Christmas, 1900. He failed to get married and became intoxicated. The spree lasted a day or two. About five months after that witness saw him drinking again. Some of the testimony of this witness was evidently addressed to a time after the date of the policy.

The testimony of McCann, the night watchman, is sufficient if standing alone to authorize the finding that assured prior to the date of the application had become addicted to the use of intoxicants. The witness testified to many occasions when assured was either drinking or drunk. His statements, however, are much modified by cross-examination, and in the light of the other testimony its weight and effect was for the jury. The witness Barefield also testified strongly for defendant. Dr. McPherson saw assured intoxicated at New Orleans in February, 1901, evidently at the time mentioned by the witness H. M. Lawrence. N. C. O'Gilvie saw assured under the influence of liquor one time about ten or twelve years prior to the trial and mentions no other occasion.

The docket of the mayor's court, introduced over the objection of appellees, showed a case docketed against assured for intoxication June 6, 1901; for disturbing the peace August 28, 1901. The first case is undisposed of and unexplained by other testimony. In the second a fine was paid, but it is not shown that assured was drinking in connection with the offense.

In the early part of 1902 the father of assured notified the liquor dealers not to sell assured any more liquor. The testimony as to the use of liquor after the date of the application was admitted not in bar of the suit, but as bearing on the habits of assured prior to that date. It may be stated generally that many of the occasions mentioned by the witnesses for defendant occurred after the date of the application.

In view of the evidence all together, we do not say we would have rendered a like verdict had the issue been addressed to us primarily, but the evidence presents a conflict and we can not say the jury's verdict that prior to March 13, 1901, assured was not in the habit of using intoxicants was unconscientious or the result of improper motive. The company asked as to the habit, practice or custom of assured as to the use of intoxicants. The assured answered that he had acquired no such habit. The jury have found his answers true and the verdict has the approval of a conscientious trial judge. Under the facts detailed we do not feel authorized to disturb the verdict.

The defendant complains of the failure of the trial court to define to the jury the term "use." The word is one of daily use and is commonly understood in the sense in which it was employed in the questions propounded to assured. The court left it to the jury to determine whether the assured had answered the questions falsely, and in submitting the

issue did not undertake to define the term. The omission, if error, called for a special charge accurately worded, which was not requested.

The special charges number 5 and number 6 requested by defendant were upon the weight of the evidence. The other assignments do not require detailed discussion. They are without merit.

The disposition of this appeal renders it unnecessary to dispose of appellees' cross-assignments. Affirmed.

*Affirmed.*

## ON MOTION FOR ADDITIONAL CONCLUSIONS OF FACTS AND LAW.

In response to the request of appellant we correct a fact conclusion appearing in the main opinion as to the date of the death of the mother of deceased. She died in August, 1899, and not in 1898.

In the main opinion we stated that the docket of the mayor's court showed a fine paid for disturbing the peace in June, 1901. The fine was in fact paid on the charge of drunkenness in August of that year.

The other parts of the motion practically request a finding that there was no conflict between the testimony of the witnesses adduced by plaintiffs and those adduced by defendant as to the habits of deceased with reference to the use of intoxicating liquor. This we can not allow but must adhere to our first conclusion.

That such testimony as was adduced by plaintiffs presents the issue of sobriety has support in the highest authority. In the case of Insurance Company v. Muskegon Bank, 122 U. S., 501, cited in the main opinion, the court speaking to a like question said: "The court had no right . . . to ignore the testimony of four or five respectable and intelligent gentlemen who knew Comstock" (the insured) "well during the most important part of this period, during several years of it. Who saw him almost daily and who testify that they never had any reason to suppose he used ardent spirits at all, much less to excess. It was for the jury to weigh all these circumstances and to determine in view of them all, whether he was habitually intemperate." We are clearly of opinion that in the case at bar the issue was for the jury.