KANSAS CITY LIFE INS. CO. v. BLACKSTONE.

(Court of Civil Appeals of Texas. Texarkana. Jan. 5, 1912. On Motion for Rehearing, Feb. 1, 1912.)

1. INSURANCE (§ 267*)—LIFE INSURANCE—APPLICATION—WARRANTIES.

Answers in an application for life insurance when operating as affirmative warranties need only be substantially true; but, where they are not substantially true, the insurer may treat the policy as forfeited without reference to the materiality of the answers.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 565–569; Dec. Dig. § 267.*]

2. INSURANCE (§ 295*)—LIFE INSURANCE—APPLICATION—WARRANTIES.

A statement in his application that insured's place of birth and residence was a designated town is not substantially true where he was born and resided about seven miles therefrom; and, where the statement is a warranty, insurer may forfeit the policy with-

out reference to the materiality of the statement.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 295.*]

3. INSURANCE (§ 296*)—LIFE INSURANCE—APPLICATION—WARRANTIES.

A statement by an applicant for life insurance that he had never been engaged in or connected with the manufacturing or sale of malt or spirituous liquors is substantially false where when a boy 15 or 16 years old he worked at a still used by his father in manufacturing intoxicating liquor, and, when the statement is a warranty, the insurer may forfeit the policy.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 296.*]

4. INSURANCE (§ 293*)—LIFE INSURANCE—APPLICATION—WARRANTIES.

An applicant for life insurance in stating his full family history stated that he had three brothers and two sisters living, and a brother, but no sister, dead. He had two brothers of the whole blood and five brothers of the half blood living, and a brother of the whole blood dead, and two sisters of the whole blood living and one sister of the half blood dead. *Held* that, since a full family history should include the history of the brothers and sisters of the half blood, the statement was substantially false, and, when constituting a warranty, insurer could forfeit the policy on that ground.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 293.*]

5. INSURANCE (§ 387*)—LIFE INSURANCE—FORFEITURE—WAIVER.

A waiver by an insurer of a ground of forfeiture of which it has knowledge is not a waiver of another ground of forfeiture of which it has no knowledge.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1025; Dec. Dig. § 387.*]

6. INSURANCE (§ 375*)—FORFEITURE—WAIVER—AUTHORITY OF AGENT.

An agent of an insurance company authorized to solicit insurance, deliver policies, and collect premiums may not after the execution of a policy waive any of its conditions.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 375.*]

7. INSURANCE (§ 601*)—LIFE INSURANCE—PAYMENT—MISTAKE OF FACT.

An insurance company not induced by fraud to issue a policy and not induced by the misconduct of the beneficiary therein to pay it on the death of insured may not recover the amount paid, on the theory of a mistake due to its ignorance of facts entitling it to avoid the policy for breach of warranty in the application.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 601.*]

Error from District Court, Upshur County; R. W. Simpson, Judge.

Action by James H. Blackstone against the Kansas City Life Insurance Company, in which defendant filed a cross-action. From a judgment for plaintiff and denying relief on the cross-action, defendant brings error. Reversed and rendered.

Acting as a soliciting agent for the plaintiff in error, one Tom B. Blackstone induced his cousin, Harvey A. Blackstone, a young man about 22 years of age, to apply to plaintiff in error for insurance on his life in the sum of $5,000. In accordance with the application, plaintiff in error issued to said Harvey A. Blackstone two policies, each dated August 23, 1909; one for the sum of $3,000, and the other for the sum of $2,000. On one of the policies was an indorsement, signed by the company's president and secretary, as follows: "In consideration of an additional premium, this policy is hereby issued as preliminary term insurance until Aug. 23, 1909, when the regular annual premium will be due and payable, and thereafter said premium will be due on the 23d day of August of each year. This 23d day of June, 1909." On the other was an indorsement similarly signed, as follows: "In consideration of an additional premium this policy is hereby issued as preliminary term insurance until September 23, 1909, when the regular annual premium will be due and payable, and thereafter said premium will be due on the 23d day of September of each year. This 23d day of June, 1909." Each of the policies, as originally written, was payable to the insured's aunt, Etta Blackstone, but in compliance with a request made by the insured the policies were so changed July 29, 1909, as to make his father (defendant in error here), instead of his aunt, the beneficiary.

On the afternoon of August 5, 1909, as he and said Tom B. Blackstone were returning, walking, to the home of the latter from a wood where they had been hunting squirrels, the insured was instantly killed as the result of a gunshot wound he then received. Afterwards, to wit, on August 18, 1909, on proof made to it of the death of the insured, in compliance with stipulations in the policies, plaintiff in error paid to defendant in error, the beneficiary named as aforesaid, the sum of $5,000 as the full amount due and payable by it by the terms of the policies, and defendant in error thereupon executed and delivered to plaintiff in error his receipt, reciting that the sum paid to him had been received by him "in full of all claims whatsoever" in his favor under the policies.

Each of the policies contained a provision as follows: "Should the death of the insured under this policy result from the effects of an accident (during the premium payment period herein) and such death occur within 48 hours from the happening of said accident, the amount payable hereunder will be," in the case of one of the policies, it is recited, $6,000 and, in the case of the other, $4,000. At the time the payment as stated was made to defendant in error he had never had possession of and had never read either of the policies, and was ignorant of the contents of same.

The death of the insured having occurred within 48 hours from the time he received the wound, on the theory that assured received the wound as the result of an accident, and

that, therefore, the provision in the policies last quoted above applied to the case, defendant in error commenced and prosecuted to the judgment in his favor, now before us for review, his suit against plaintiff in error for the sum of $5,000 as a balance due him by the terms of the policies.

In his petition defendant in error alleged, among other things, that within a few days after the death of the insured, and before defendant in error had ever seen the policies, one Thorp, plaintiff in error's general agent, obtained the possession of same from said Tom B. Blackstone, who held same for defendant in error, and thereafterwards refused to surrender the possession thereof to defendant in error; that said Thorp falsely and fraudulently represented to defendant in error, then ignorant of the contents of the policies, that same, in the aggregate, were for the sum of only $5,000, and that that sum was the full amount due to defendant in error on the policies; and that defendant in error, relying upon the truth of the representations so made to him, was induced to execute and deliver to plaintiff in error his receipt, reciting that the sum of $5,000 paid to him by plaintiff in error was in full of all claims in his favor by virtue of the policies.

In its answer plaintiff in error alleged that it was not liable to defendant in error in any sum, because it had been induced to issue the policies as the result of fraudulent schemes and devices of its said agent Tom B. Blackstone, in that said Tom B. Blackstone "procured himself," quoting from the statement in its brief, "to be appointed agent of the defendant fraudulently for the purpose of this particular transaction, that thereafter he induced Harvey A. Blackstone to apply for the policies by fraudulently representing to him that the defendant would employ him at a good salary, and that he would pay the premiums on said policies so long as the said Harvey desired and remained unable to pay the same, and that thereafter, in pursuance of his originally formed design, the policies having been obtained and being in his possession, he killed the said Harvey A. Blackstone." It was alleged in the answer that defendant in error, before he instituted the suit, had full knowledge of the fraud, and by his conduct had ratified and adopted same. The finding against plaintiff in error as to this defense, we think, had ample support in the testimony, and therefore this phase of the case will not be further referred to in disposing of the appeal.

Another defense interposed by plaintiff in error was that the provisions in the policies for the payment of double the sums for which they were respectively written were not in force at the time the insured was killed. As the appeal will be disposed of on other grounds, it will not be necessary to construe the policies with reference to this contention.

Still another defense was that certain statements hereinafter set out made by the insured in his application for the insurance and warranted by him to be true were false, and that for that reason the policies were void. In reply to this defense, defendant in error alleged a waiver of the forfeiture asserted.

Plaintiff in error further alleged that the payment of $5,000 made by it to defendant in error August 18, 1909, as aforesaid, was made under a mistake of fact, and it sought to recover same back.

The application for the insurance was in two parts—part 1 containing answers made by the insured to questions propounded to him by the company's soliciting agent, and part 2 containing his answers to questions propounded to him by a medical examiner. The questions were embraced in printed forms prepared and furnished by the company. In part 1 immediately preceding the questions to be answered by the applicant was this recital: "Answers to these questions and to the medical examiner form a part of the contract between the insured and this company. The answers to each question herein contained are by me warranted to be full, complete and true." Immediately following the questions and the answers made thereto by the insured was the following: "It is hereby declared and warranted that the above are my own full and true answers to the foregoing questions, and that the same, together with my answers to the examining physician, are the only statements made to the Kansas City Life Insurance Company, which, together with this stipulation, constitute my application to said company for insurance, and should my application be approved, and a policy of insurance be issued, such policy, with this stipulation, shall be and constitute the contract between the parties hereto, and this application is submitted to the company with the following express covenants, warranties, and agreements on my part, to wit: (1) That the answers to all the above questions, and to the questions propounded by the examining physician, are full, complete, and true, and that no omission, concealment, or mental reservation has been made of any facts or circumstances relating to my past or present habits, health, physical condition, or family history. If any false statements have been made, or if any facts which should have been stated to the company have been withheld, or if any of the warranties contained in this application are not true, or if any violations of the conditions or restrictions in this contract, or if any omission or neglect to pay the premium when due shall occur, then, or in either event, the said policy of insurance shall be null and void, without action or notice by the company. * * * (6) I also agree that proof that the agent taking this application has knowledge of facts contrary to any of the foregoing answers in this application shall not make valid a policy issued on the

faith of such answers, which would otherwise be void by reason of false answers given by me. (7) I hereby certify that I have carefully read (or heard read) the foregoing application, together with my warranties therein made, and hereby warrant the truthfulness of the same."

Following the answers made by the insured to questions in part 2 of the application propounded to him by the medical examiner was the following: "I do hereby agree and warrant that the foregoing answers, written to the above questions, are my answers, and are full and complete, correct, and true, and that the same shall be made a part of my application for policy of insurance in the Kansas City Life Insurance Company, and that I am the person who signed part 1 of this application to said company. And I do hereby repeat as to the foregoing answers in part 2 of this application each and every warranty and agreement contained and recited at the end of part 1 hereof."

Each of the two parts of the application was duly signed by the decedent.

Each of the policies contained this recital: "This policy is issued in consideration of the stipulations, agreements, representations, and warranties made in the application for this policy (which application is made a part hereof) and in further consideration of the annual premium," etc.

In reply to a question in part 1 of the application, the insured stated both his place of birth and his place of residence to be Big Sandy, Upshur county, Tex. The exact fact was that he was born and resided at a point in Upshur county about seven miles north of Big Sandy. In reply to another question in said part of the application he stated that he was not then and had never been "engaged in or connected with the manufacture or sale of malt or spirituous liquors." The fact was that, when he was a boy 15 or 16 years of age, the applicant had worked as a hand about a still situated on his father's place, owned by his father and uncles, which during about 10 years had been operated by them under a license from the federal government in the manufacture of spirituous liquors. One of the questions propounded in part 2 of the application called upon the decedent to give his "full family history as accurately as possible." In reply to the question the insured stated that he then had three brothers and two sisters living, and a brother, but no sister, dead. The fact was that his father had been married three times, and that the decedent then had two brothers of the whole and five brothers of the half blood living, and a brother of the whole blood dead, and that he had two sisters of the whole blood living and one sister of the half blood dead.

The case was submitted to the jury on special issues, and on their findings a judgment in favor of defendant in error was rendered for the sum of $6,300, which included

interest on the $5,000 claimed to be due, and attorney's fees.

Locke & Locke, for plaintiff in error. J. S. Barnwell and Warren & Briggs, for defendant in error.

WILLSON, C. J. (after stating the facts as above). [1] It seems to be conceded by defendant in error in his brief that the answers set out in the statement above should be held to have operated as affirmative warranties; and, when considered, as they must be, with reference to the recitals in the policies and the stipulations in the application for same set out in said statement, it is plain they must be held to have so operated. Supreme Lodge K. & L. of H. v. Payne, 101 Tex. 455, 108 S. W. 1160, 15 L. R. A. (N. S.) 1277; Insurance Co. v. Pinson, 94 Tex. 554, 63 S. W. 531; 3 Cooley's Briefs on Insurance, p. 1935. While there is much authority for saying that such warranties being in the nature of conditions precedent to the validity of the policy must be literally true, otherwise the contract is not enforceable (3 Cooley's Briefs on Insurance, p. 1950), the better rule, it seems to us, is that they need not be literally true, but are sufficiently complied with if substantially true. 25 Cyc. 802; Insurance Co. v. Pinson, supra, 94 Tex. 556, 63 S. W. 531.

Treating the answers as warranties, the first question is: Were they substantially true? If they were not, then, without reference to their materiality, it must be said that appellant was entitled to treat the contracts as forfeited. Insurance Co. v. Simpson, 88 Tex. 333, 31 S. W. 501, 28 L. R. A. 765, 53 Am. St. Rep. 757; Flippen v. Insurance Co., 30 Tex. Civ. App. 362, 70 S. W. 788; Insurance Co. v. Terry, 37 Tex. Civ. App. 486, 84 S. W. 657; Insurance Co. v. Coalson, 22 Tex. Civ. App. 64, 54 S. W. 392; 25 Cyc. 805; 3 Cooley's Briefs on Insurance, p. 1951; 1 Page on Contracts, p. 107.

[2] That the answer of the insured in his application that he resided and was born in "Big Sandy, Upshur county, Texas," literally was not true is not disputed; but the contention is made by appellee that, though not literally true, the answer was a "reasonable one," and therefore sufficient. It may have been a reasonable answer to the question propounded, but whether it was or not is not the question. To satisfy the warranty, it must have been at least substantially true. Keeping in mind the fact that we are not permitted to consider the materiality vel non of the question as to where the insured was born and resided, but can only inquire as to whether the answer he made, without reference to its materiality, was true or substantially true or not, we feel bound to say that it was neither. He did not reside and was not born in Big Sandy, or in any territory which by any stretch of the imagination could be regarded as a part of or even as

contiguous to that town. The answer was as wholly untrue as it would have been if, instead of declaring that insured was born and resided at a point seven miles from Big Sandy, it had declared that he was born and resided at a point 50 or 100 miles from that town. In the Pinson Case, cited above, the insured answered that he had five living sisters, aged, respectively, 52, 50, 47, .45, and 36 years. The truth was that the ages of his sisters, respectively, were 49, 46, 44, 36, and 33 years. The Supreme Court said: "The rule that a substantial performance of a warranty is sufficient does not apply in this case, and we are not called upon to say what would be the effect if the variance between the actual ages and the ages warranted was very slight. Lest the opinion might be misunderstood, we will state that we do not intend to assert that a literal compliance with such a warranty would be necessary, but in our opinion the facts do not justify the court in assuming that the discrepancy in the ages is so irrelevant as to avoid the effect of the warranty." In Hutchinson v. Insurance Co., 39 S. W. 325, the insured answered that his place of residence was "Kyle, Hays county, Tex." The truth was that he resided in the country about 12 miles from Kyle. It was held that the answer was a false one, and, being a warranty, that the contract was thereby avoided.

[3] The testimony was undisputed that the insured when a boy 15 or 16 years of age worked as a hand at a still used by his father in manufacturing intoxicating liquor. This being true, must it be said that his answer that he had never been "engaged in or connected with the manufacture or sale of malt or spirituous liquors" was false? So far as it declared he had never been "engaged in the manufacture" of such liquors, we think the answer reasonably might be construed as meaning that he had never been so engaged on his own account, and so far was true. But the words "connected with" had a broader meaning, and we think a conclusion that the answer was false in so far as it declared that the insured had never been "connected with the manufacture" of such liquors cannot be escaped. Dwight v. Insurance Co., 103 N. Y. 341, 8 N. E. 656, 57 Am. Rep. 729. As authorizing a contrary conclusion, appellee cites Collins v. Insurance Co., 32 Mont. 329, 80 Pac. 609, 108 Am. St. Rep. 578, Guiltinan v. Insurance Co., 69 Vt. 469, 38 Atl. 315, and Insurance Co. v. Fraser, 76 Fed. 705, 22 C. C. A. 499. The Collins Case is the nearest in point, but we think is of no value in construing the warranty relied on here. In that case the insured had stated his occupation to be "proprietor of a restaurant," and had then declared that he was "not in any way connected with the manufacture or sale of ale, wine or liquor." It appeared that the insured's restaurant was in the rear end of a room divided by a partition into two parts; that one Nelson kept a saloon in the front part of the room; that Nelson boarded with the insured; and that sometimes, while Nelson was taking his meals, to accommodate him, the insured would wait on customers at the bar, and, when Nelson was called out temporarily during the day, would perform, gratuitously, a like service for him. The court reached the conclusion that the facts recited did not show the assured to have been "connected with" the sale of liquor, saying: "The evident purpose of requiring the declaration in the application was to inform the company exactly as to the business connections of the applicant, so that it, through its agents, could determine whether or not the risk was a suitable one. From this point of view—and we think it the proper one—the statement was true."

[4] In stating his "full family history," the insured answered that he then had three brothers and two sisters living, and a brother, but no sister, dead. It was conclusively shown that he then had two brothers of the whole blood and five brothers of the half blood living, and a brother of the whole blood dead; and that he had two sisters of the whole blood living, and one sister of the half blood dead. His "full family history," it clearly appeared, therefore, was not given, and reasonably the answer could not be otherwise construed than as untrue, in the sense that it was incomplete and failed to disclose all the information the inquiry called for. It cannot be doubted that his "full family history" should be held to include the history of his brothers and sisters of the half blood.

[5, 6] We have thus reached the conclusion that there was a breach of each of the warranties. But appellant might have waived the forfeiture it had a right to declare, so as to entitle appellee to recover on the policies in spite of the forfeiture. The next question, therefore, is: Was the testimony sufficient to support a finding that appellant waived the forfeiture?

Appellee's contention that the testimony was sufficient to justify a finding that appellant's soliciting agent, Tom B. Blackstone, knew the truth about the matters covered by the warranties at the time he delivered the policies to the insured, and that the delivery by him of the policies with such knowledge was a waiver which bound appellant cannot be sustained. In the first place, it did not appear from the testimony that said agent at the time he delivered the policies knew the insured had ever been connected with the manufacture of intoxicating liquor. If the delivery by him of the policies at a time when he knew the other warranties had been breached should be treated as a waiver by plaintiff in error of those breaches, it should not be treated as a waiver by plaintiff in error of the breach of which it did not appear he had knowledge. "A waiver by an insurer of a ground of forfeiture of which it has knowledge will not constitute a waiver of an-

other ground of forfeiture of which it has no knowledge." 3 Cooley's Briefs on Insurance, p. 2469; Insurance Co. v. Moriarty, 36 S. W. 943. In the second place, it seems to be the law that an agent of an insurance company only authorized, as said Tom B. Blackstone was, to "solicit insurance, deliver policies, and collect premiums, cannot, after the execution of a policy, waive any of its conditions." 3 Cooley's Briefs on Insurance, p. 2484.

Was the testimony sufficient, as defendant in error contends it was, to support a finding that plaintiff in error, after the death of the insured, with knowledge of the facts entitling it to avoid the policies, waived the forfeiture? It was sufficient to show that plaintiff in error, through its general agent, one Thorp, admitted it was liable on the policies; but Thorp testified, and his testimony was not contradicted by any other testimony we have been able to find in the record, that he never knew until several months after the plaintiff in error through him had paid $5,000 to defendant in error on account of the policies, that the insured had ever been connected with the manufacture of intoxicating liquors. It was not pretended that plaintiff in error in any other way than through Tom B. Blackstone, as stated above, and through Thorp, had any knowledge that the warranties or any of them had been breached by the insured. It therefore appeared by the undisputed testimony that at the time the waiver asserted was claimed to have occurred plaintiff in error had no knowledge of the breach by the insured of the warranty based on his answer that he had never been connected with the manufacture of intoxicating liquors. Without such knowledge on its part, it cannot be said that plaintiff in error had waived this ground of forfeiture. "It is essential that a company should have had some knowledge of the forfeiture, before it can be held to have waived it." Field, J., in Insurance Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 389. And see Brotherhood of Railroad Trainmen v. Roberts, 48 Tex. Civ. App. 325, 107 S. W. 627; Insurance Co. v. Wright, 125 S. W. 363; 25 Cyc. 865; 3 Cooley's Briefs on Insurance, pp. 2467, 2468, 2469.

It thus appearing that one of the grounds upon which plaintiff in error had a right to declare a forfeiture of the contract had never been waived, without reference to whether the breaches of the other warranties had been waived or not, it must be held that plaintiff in error was not precluded from asserting the invalidity of the policies, as against the claim here made by appellee; for, as before stated, a waiver by plaintiff in error of a ground of forfeiture known to it would not operate as a waiver of a ground unknown to it. Insurance Co. v. Moriarty, 36 S. W. 943; Insurance Co. v. Loyd, 67 Ark. 584, 56 S. W. 45, 77 Am. St. Rep. 136; 3 Cooley's Briefs on Insurance, p. 2469. Plaintiff in error having asserted in this suit, as it had a right to, the invalidity of the policies, and it appearing that they were invalid, defendant in error should have been denied the recovery he sought.

[7] The conclusion reached will lead to a reversal of the judgment, and would dispose of the appeal without further consideration of the record but for the complaint of plaintiff in error based on the refusal of the trial court to instruct the jury to find in its favor on its cross-action, whereby it sought to recover back the $5,000 it had paid to defendant in error. We do not think it was entitled to recover back the money it had paid. It was not induced to issue the policies because of any fraud practiced upon it. Shirk v. Mitchell, 137 Ind. 185. 36 N. E. 852. It did not pretend that it was induced to pay the $5,000 to defendant in error because of any misconduct on his part. The contention was that the payment was made because of a mistake on its part due to its ignorance of the facts entitling it to avoid the policies. The question was made before the Court of Appeals of New York in Insurance Co. v. Minch, 53 N. Y. 147. In disposing of it, the court said: "A policy of insurance is an executory contract. The time for insisting upon the breach of any warranty contained in the original application was when the claim was made for the execution of the contract. Mere ignorance of a fact which might have enabled the company to defend an action upon the policy on account of such breach is not such a mistake of fact as will enable it to recover back the money. It will be presumed that the company either knew the fact or intended to waive any such defense, and voluntarily paid the money. Otherwise there would be no end of controversy and litigation, and the party receiving the money would hold it subject to a lawsuit until the statute of limitations intervened." And see Stache v. Insurance Co., 49 Wis. 89, 5 N. W. 36, 35 Am. Rep. 772; Smith v. Insurance Co., 62 N. Y. 86; Insurance Co. v. Parham. 80 Tex. 518, 16 S. W. 316.

We sustain plaintiff in error's second assignment of error, and, reversing the judgment of the court below, will here render judgment that defendant in error take nothing by his suit, and that plaintiff in error recover its costs.

### On Motion for Rehearing.

In the opinion, in discussing the question made as to the insured's connection with the manufacture of intoxicating liquor, this statement was made: "The testimony was undisputed that the insured when a boy 15 or 16 years of age worked as a hand at a still used by his father in manufacturing intoxicating liquor." The statement is challenged as unfair to defendant in error. We believe it is, in so far as it asserts that the testimony was undisputed that the insured when he worked as a hand at the still was as old as 15 or 16 years. Defendant in error was the only witness who testified as

to the insured's work at the still. On his cross-examination by plaintiff in error defendant in error's testimony was as follows: "Well, as to when I was engaged in the liquor business, it has been about 8 or 10 years. I was engaged in the business with my two brothers Steve B. Blackstone and Mark Blackstone. As to when I ceased to have any connection with the business, well, as far as the connection goes, the still is there yet, but there has not been any whisky made there by any of the family in, I don't know, it must have been six or eight years. I could not say exactly. The still is on my place. A brother of mine done the distilling. Brother Mark done the distilling. He is a single man. Yes, sir; my son Harvey A. Blackstone was about the still when he was a kid. He was there, of course. As to what he did in connection with the still, I would say nothing hardly ever. Sometimes he worked there as a hand. Sometimes he went there and worked about there, but he did not know anything about making whisky." On his redirect examination by his own counsel, defendant in error testified: "I couldn't say how long it has been since I engaged in the manufacture of whisky, operating a still out there. It must be six or eight years. Q. Why, hasn't it been 16 or 17 years, to refresh your memory? A. Yes; let me see, I believe we made whisky there in '92. It has been longer than I thought it had, or the time slipped off with me. It has been longer than I thought it was. Harvey was 22 the day before he was killed, and you can go back and sorter tell how old he was then. It has been longer than I thought it was. I couldn't tell. I know the whole business was run down. Yes, sir; it was a licensed still. We had a government man with us all the time. I couldn't say how old Harvey was when he worked around there. He was mighty little, but I think he used to help us with the peaches or apples. I think he worked around there some. It seems to me he did. No, sir; I don't think '92 is about the last year. I think that was the year we put up the still and commenced making, and we never made any corn whisky only that one year. We never made anything but brandy after that. No, sir; Harvey wasn't engaged in the manufacture or sale, or connected with the manufacture or sale to my knowledge after he reached 21." The insured was killed in August, 1909. He reached the age of 22 years the day before he was killed. The testimony quoted was given in June, 1910.

The conclusion reached by this court that the testimony showed a breach, by the insured of the warranties set up by the plaintiff in error as a reason why a recovery on the policies should be denied is assailed as unreasonable. We do not think so. It was reached in deference to the rule we under-

stand to be established in this state that, without reference to their materiality, such warranties in such a contract, if not literally, must be substantially, true, otherwise the contract cannot be enforced by the party intended to be indemnified by it. We agree that the rule is unreasonable when applied to the facts of such cases as the Hutchinson and Pinson Cases, cited in the opinion, and when applied to the facts of this case. If we were authorized to do so, we would not hesitate to so change it as to require in cases like those and this one, conclusions radically different from those reached. But, so long as the rule remains unchanged, we cannot do otherwise than enforce it. Therefore the motion is overruled.