GRANVILLE MORSE *vs.* FRATERNAL ACCIDENT ASSOCIATION OF AMERICA.

Norfolk. November 21, 1905. — February 28, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Insurance*, Accident. *Fraternal Beneficiary Corporation.* *Practice, Civil,*
Agreed statement of facts.

A provision in an accident insurance certificate issued by a fraternal beneficiary association, "that if the insured is injured while engaged temporarily or otherwise in any occupation or exposure classed by this association as more hazardous than that here given, his insurance and weekly indemnity shall only be so much as the premium paid by him will purchase at the rate fixed for such increased hazard," refers only to the classification of risks in force at the time the certificate was issued, and gives the association no right by a new classification of occupations to change the amount of insurance to which a member is entitled.

In an action on a certificate issued to the plaintiff's intestate by a fraternal beneficiary association insuring against accident, it appeared that the certificate contained a provision, "that if the insured is injured while engaged temporarily or otherwise in any occupation or exposure classed by this association as more hazardous than that here given, his insurance and weekly indemnity shall only be so much as the premium paid by him will purchase at the rate fixed for such increased hazard," that the plaintiff's intestate when the certificate was issued to him was a stage driver, an occupation which belonged to a class of risks entitling the plaintiff to recover $1,250 on the certificate, that later the plaintiff's intestate ceased to be a stage driver and became a passenger brakeman on a railroad, that he notified the defendant's secretary of the change, and received a letter from the defendant's secretary and treasurer informing him that as a passenger brakeman he was entitled to the same amount of insurance as before, that several years later the defendant adopted a new classification " of occupations and exposures, to be used as the manual or classifications of occupations and exposures of this association for all members now insured or to be hereafter insured in this association," that by the new classification a passenger brakeman was put in a class of greater risk and, if the provision applied to the certificate of the plaintiff's intestate, the amount which the plaintiff could recover was reduced to $250, that the defendant's secretary and treasurer had written and mailed a letter addressed to the intestate notifying him of the change and requesting that his certificate be returned to the defendant for rewriting so that it might conform to the new classification. It did not appear that this letter ever was received by the intestate, who did not return his certificate and continued to pay the same assessments and dues as before. The certificate contained a provision under which the defendant could cancel it at any time on making certain payments to the holder. *Held,* that the provision of the certificate above quoted must be construed as referring to the classification in force at the time the certificate was issued, and gave the defendant no right by a subsequent change of classification to reduce the amount of insurance of the plaintiff's intestate; that, even if it had appeared that the defendant's letter

of notification of the change of classification had been received by the plaintiff's intestate, it could be found in spite of his failure to answer the letter that he did not assent to the change ; and that the plaintiff was entitled to recover the full amount of the insurance.

On an agreed statement of facts without the power to draw inferences the court cannot infer from the stated fact that a letter was written and mailed that it was received by the person to whom it was addressed.

SHELDON, J.   In this action the plaintiff seeks to recover the sum of $1,250 on an accident insurance certificate issued to his intestatè Elmer L. Morse by the defendant.   The case comes before us upon the defendant's appeal from a judgment of the Superior Court in favor of the plaintiff upon an agreed statement of facts.

The intestate took his certificate and became a member of the defendant association on June 15, 1888.   He was then a stage driver, and was insured as a member of class 5, according to the defendant's classification then in force; and by the certificate issued to him by the defendant on that date, the defendant agreed to pay to his executors or administrators the sum of $1,250 in the event of his death from the injuries insured against, " except that if the insured is injured while engaged temporarily or otherwise in any occupation or exposure classed by this association as more hazardous than that here given, his insurance and weekly indemnity shall only be so much as the premium paid by him will purchase at the rate fixed for such increased hazard."   The policy also provided that the certificate holder should be bound by the rules and regulations of the association.

In May, 1891, the intestate ceased to be a stage driver and became a passenger brakeman on a railroad.   At this time, by the defendant's classification of occupations and risks, a passenger brakeman was included in the same class as a stage driver.   On November 9, 1891, the intestate wrote a letter to the defendant's secretary and treasurer, stating that he had become a passenger brakeman, and inquiring how that would affect his insurance ; to which, on the eleventh day of the same month, the secretary and treasurer answered by a letter stating that a passenger brakeman was entitled to the same amount of insurance, $1,250, that the intestate had been holding, with the same weekly indemnity for disabling injuries received in that occupation.

On January 17, 1896, the defendant, at a meeting duly called, adopted a new classification of "occupations and exposures, to be used as the manual or classifications of occupations and exposures of this association for all members now insured or to be hereafter insured in this association." By this new classification, passenger brakemen were included in class 8, and the amount of insurance payable to them was reduced to $250. On February 7, 1896, the defendant's secretary and treasurer wrote and mailed to the intestate a letter notifying him of this change, and requesting that his policy be returned to the defendant for rewriting so that it might conform to the new classification. It does not appear by the agreed facts whether the intestate received the letter or not; nor does the statement authorize the court to draw any inferences from the facts stated. The intestate continued to pay the same assessments and dues as before, and these were the same in amount that they had previously been. After the action was brought, the defendant's counsel tendered to the plaintiff's counsel the sum of $287, apparently being the reduced amount of insurance with interest and costs.

The question involved is whether the amount of the intestate's insurance was cut down by the change in the classification made in 1896, so that thereafter he was insured for only $250 instead of $1,250, as stated in the policy.

If the original contract had provided that the defendant might make any alteration in its rules, there is no doubt that both the plaintiff and his intestate would have been bound by the change which was made. *Pain* v. *Société St. Jean Baptiste,* 172 Mass. 319. On the other hand, if the policy here in question had provided absolutely for the payment of a fixed sum to the plaintiff, without reference to the character of his occupation, there is no doubt that the defendant could not, by such action as it has taken, cut down its liability to a smaller sum. *Newhall* v. *American Legion of Honor,* 181 Mass. 111. But this policy is not in terms made subject to any future alteration that the defendant might make in its rules; and on the other hand it contains the express stipulation that for any injury occurring while the insured is engaged in any occupation classed by the defendant as more hazardous than that mentioned in the policy, he shall be entitled only to a reduced amount of insurance.

The real question accordingly is whether this last stipulation shall be taken to refer only to the classification in force at the time of issuing the policy or to include any new classification that may from time to time be adopted by the defendant. Manifestly, the latter construction, if adopted, would, under the language of this policy, leave the plaintiff in a position where his rights could not be enlarged, but might be very greatly diminished, if not wholly taken away by the mere action of the defendant. The payments to be made by the insured would remain unchanged; but the amounts to be paid by the insurer would be capable of reduction to any extent from time to time. In the case at bar, the change made by the defendant would have the effect to reduce the sum to be paid upon the death of the insured to one fifth of the amount specified in the policy. On the other hand, if this were the intention of the parties, it is easy to say so in the policy. We do not think that the construction contended for by the defendant would be a reasonable one, though we are aware that it seems to have prevailed in Pennsylvania in a case which turned largely upon the construction of the charter of the association. *St. Patrick's Male Beneficial Society* v. *McVey*, 92 Penn. St. 510. We are of opinion that by the proper construction of this policy the stipulation as to the defendant's classification of occupations and the agreement of the certificate holder to be bound by the defendant's rules and regulations must be taken to refer to the classification and to the rules in force at the time that the policy was issued.

But the defendant contends that the insured must be taken to have assented to this reduction because although notified by the association of the change which had been made in the classification and of the effect which this change would have upon his insurance, he made no complaint and expressed no dissatisfaction; and the defendant relies on *Fox* v. *Masons' Fraternal Accident Assoc.* 96 Wis. 390. But there the defendant's letter was written in answer to an inquiry of the insured, and there was no question that he had received it. In this case the agreed facts do not show that he received the notice; and although they do contain enough to warrant the court in drawing such an inference if it were at liberty to do so,

yet in the absence of any provision to that effect, the court is not at liberty to infer the existence of any further essential facts which are not as matter of law necessarily to be inferred, but is confined to the consideration of the facts to which the parties have agreed. *Mayhew* v. *Durfee,* 138 Mass. 584. *Collins* v. *Waltham,* 151 Mass. 196, 197. But even if the plaintiff's intestate had received the notice, we do not think his assent to the action taken could be conclusively inferred. He did not expressly assent to it ; he did not forward his policy to have it rewritten, as requested by the notice ; the dues and assessments which he afterwards paid were the same that he was required to pay under his original agreement. The rights of the defendant were sufficiently protected by the stipulation that it might at any time cancel the policy.*

The tender made by the defendant was for an insufficient amount, and we need not consider whether it was otherwise good.

The judgment for the plaintiff for the total amount named in the policy must be affirmed ; and it is

*So ordered.*

*M. H. Browne,* (*J. M. Browne* with him,) for the defendant.
*E. J. Whitaker,* for the plaintiff.

---

* The provision of the certificate referred to was as follows : " The association may cancel this certificate at any time by returning to the certificate holder any and all moneys paid by the certificate holder to the association, less a pro-rata share for the time it has been in force."