MARY A. MULCAHY vs. THE TRAVELERS INSURANCE
COMPANY.

Worcester.   September 26, 1927. — November 22, 1927.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Insurance*, Accident: insured's change of occupation. *Contract*, Construction.

In 1921 a policy of accident insurance was issued for a term of three
months, renewable with the consent of the insurance company for
three-month terms by payment of premiums in advance, to one who
stated his occupation to be that of manager-proprietor of a custom
shirt company, performing office, travelling and executive duties,
which occupation was classified as "select" in the insurance company's
statement of premiums and classification of risks then on file with the
commissioner of insurance.   At that time there was no such occupation
as prohibition enforcement officer.   In 1922 the company filed with
the commissioner of insurance for the first time a classification as pro-
hibition enforcement officer, and the premium rate for that occupation
was over three times as large as that of the policy above described.
The policy was kept in force by premium payments until the insured's
death by accident in September, 1925.   At the time of his death, he
was occupied and employed as a prohibition enforcement officer.   He
never had informed the company of his change of occupation and never
had paid any different rate of premium.   In the policy was a statement
that it contained "the entire contract of insurance except as it may be
modified by the Company's classification of risks and premium rates
in the event that the Insured is injured after having changed his occu-
pation to one classified by the Company as more hazardous than that
stated in the Policy, or while he is doing any act or thing pertaining to
any occupation so classified, . . . in which event the Company will
pay only such portion of the indemnities provided in the Policy as the
premium paid would have purchased at the rate but within the limits
so fixed by the Company for such more hazardous occupation.   If the
law of the state in which the Insured resides at the time this Policy is
issued requires that prior to its issue a statement of the premium rates
and classification of risks pertaining to it shall be filed with the state
official having supervision of insurance in such state, then the premium
rates and classification of risks mentioned in this Policy shall mean only
such as have been last filed by the Company in accordance with such
law, but if such filing is not required by such law then they shall mean
the Company's premium rates and classification of risks last made
effective by it in such state prior to the occurrence of the loss for which
the Company is liable." *Held*, that

(1) G. L. c. 175, § 108, in force when the policy was issued, contemplated that different classifications and rates of premium might be made after the issue of a policy but before the "occurrence of the injury" for which indemnity was claimed, and that, when filed in accordance with law, they would affect the amount recoverable;

(2) The words of the policy, "the premium rates and classification of risks mentioned in this Policy shall mean only such as have been last filed by the Company in accordance with" the statute requiring that previous to the issue of the policy "a statement of the premium rates and classification of risks pertaining to it shall be filed with" the proper State official, meant the last classification filed before the injury, and not a classification filed before the date of the policy;

(3) The company was liable only for a proportionate part of the named indemnity computed according to the ratio of the premium of insurance paid to the premium which should have been paid.

While it is a rule of construction that the language of an insurance policy is to be construed most strongly against the insurer, such rule does not require an interpretation which is unreasonable nor one which results unjustly.

CONTRACT upon a policy of insurance described in the opinion. Writ dated February 12, 1926.

The plaintiff demurred to a portion of the defendant's answer raising the question of law stated in the opinion. The demurrer was heard by *Lummus,* J., who sustained it and, being of opinion that the propriety of such interlocutory order ought to be determined by this court before further proceedings in the Superior Court, reported the case for such determination.

*F. P. McKeon,* for the plaintiff.

*C. C. Milton,* for the defendant.

WAIT, J. The plaintiff, the beneficiary named in a policy of accident insurance issued by the defendant to her son John M. Mulcahy on March 11, 1921, brings suit to recover the full amount of the indemnity ($7,500) set out in the policy at the date of its issue. The defendant contends that if anything is due the plaintiff, the amount is $2,270.50.

At the date on which the policy took effect, John M. Mulcahy's occupation was that of manager-proprietor of a custom shirt company, performing office, travelling and executive duties. According to the statement of premiums and classification of risks then on file with the commissioner of insurance, it was classified as "select"; and the premium

was fixed at $7.75 for insurance in $7,500. At the time of the injury for which indemnity was claimed, September 2, 1925, he was also occupied and was performing duties as a prohibition enforcement officer. No such occupation was in existence when the table of rates and manual of classification of risks in force at the issue of the policy was filed, and no such occupation was classified in March, 1921, nor had a premium for the risk of one so occupied then been fixed. On February 14, 1922, the defendant filed with the commissioner for the first time a classification as prohibition enforcement officer, and a premium rate of $25.60 for insurance in $7,500.

The policy was "issued for a term of Three months to commence on the 11th day of March 1921 . . . but it may be renewed with the consent of the Company, from term to term of Three months, each, by the payment of the premium in advance." John M. Mulcahy paid premiums of $7.75 at periods of three months up to September 3, 1925, the time of his death, to continue the policy in force. His last payment was made June 11, 1925.

The principal question for our determination is, whether payment in that amount by one occupied as he was at the time of his death entitles his beneficiary to indemnity in $7,500, or only to such proportion of that sum as the premium paid would have purchased at the rate then fixed for such occupation. The answer must be found from the proper construction of the language of the policy.

It stated that it contained "the entire contract of insurance except as it may be modified by the Company's classification of risks and premium rates in the event that the Insured is injured after having changed his occupation to one classified by the Company as more hazardous than that stated in the Policy, or while he is doing any act or thing pertaining to any occupation so classified . . . in which event the Company will pay only such portion of the indemnities provided in the Policy as the premium paid would have purchased at the rate but within the limits so fixed by the Company for such more hazardous occupation. If the law of the state in which the insured resides at the time this Policy is issued requires

that prior to its issue a statement of the premium rates and classification of risks pertaining to it shall be filed with the state official having supervision of insurance in such state, then the premium rates and classification of risks mentioned in this Policy shall mean only such as have been last filed by the Company in accordance with such law, but if such filing is not required by such law then they shall mean the Company's premium rates and classification of risks last made effective in such state prior to the occurrence of the loss for which the Company is liable."

The law of Massachusetts — G. L. c. 175, § 108 (a) — requires that before policies shall issue, the insurer shall file "its table of rates or manual of risks" with the commissioner of insurance. The insured resided in this State. He changed his occupation to one which was not set out in the manual of risks on file when the policy issued and for which no premium was then established, but which subsequently and before the occurrence of the loss was set out in a table of rates or manual of risks duly filed according to law and there classed as more hazardous than the one stated in the policy and for which a higher premium was fixed. The plaintiff contends that the language of the policy just quoted makes the statement on file when the policy was issued the one "last filed by the Company in accordance with such law," and the one and only classification of risks and premium rates which can modify the contract "in the event that the Insured is injured after having changed his occupation to one classified by the Company as more hazardous than that stated in the Policy."

Such a construction is too narrow. The policy must be read in the light of our statutes. G. L. c. 175, § 108, requires that the policy must contain, (f) 1, "A provision that such policy and such papers as may be attached to or endorsed thereon shall constitute the whole contract of insurance, except as the same may be affected by any table of rates or classification of risks filed by the company with the commissioner"; and (f) 6, "A provision that if the insured is injured . . . after having changed his occupation to one classified by the company as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining

to any occupation so classified, . . . the company will pay such proportion of the indemnities provided in the policy as the premium paid would have purchased at the rate, but within the limits fixed by the company, for such more hazardous occupation according to the company's rates and classification of risks filed with the commission prior to the occurrence of the injury . . . for which indemnity is claimed. As an alternative to the provisions of this paragraph the policy may provide that no reduction shall be made in any indemnity therein provided for by reason of any change in the occupation of the insured or by reason of his doing any act or thing pertaining to any other occupation." These provisions of law were in force when the policy issued. The policy complied with them. It did not provide in express terms for no reduction in the indemnity by reason of change of occupation. The statute manifestly contemplates that different classifications and rates of premium may be made after the issue of a policy but before the "occurrence of the injury" for which indemnity is claimed, and that, when filed in accord with law, they will affect the amount recoverable; for it provides (f) 1, for modification by "any" table of rates or classification of risks, and for payment, in the event of change of occupation, (f) 6, in accord with the table of rates and classification filed "prior to the occurrence of the injury." Had the Legislature intended otherwise, "then," or "previously," or a word of similar meaning would probably have been inserted in (f) 1, before the words "filed by the Company"; or, more simply, "the" would have been used instead of "any." The exception in clause (f) 1, is practically without significance unless it deals with tables to be filed after the issue of the policy. Clauses (f) 1 and (f) 6 become inconsistent if so construed as to confine the tables of risks and premiums to such as are on file when the policy is issued.

The plaintiff urges that the insurer has designated the rates and classification which are to control as "only such as have been filed by the Company in accordance with such law," and must have intended those last filed before the issue of the policy. We are not unmindful of the rule of construc-

tion that the language of a policy of insurance is to be construed most strongly against the insurer. *Farber* v. *Mutual Life Ins. Co. of New York*, 250 Mass. 250, 254. The rule does not compel us to give an unreasonable interpretation nor one which results unjustly. *Greenough* v. *Phoenix Ins. Co. of Hartford*, 206 Mass. 247, 251. *Lunt* v. *Aetna Ins. Co. of Hartford*, 253 Mass. 610, 616. Full force is given the words used if we construe them to mean "such as have been last filed in accordance with the law of such State," rather than "such as have been then last filed in accordance with the existing law." It is more reasonable to suppose that the parties intended to require an insured who changes his occupation to ascertain whether his action affects his rate of premium or the amount of his indemnity, than to impose upon the insurer the burden of keeping itself informed at all times in regard to the occupation of the insured. This is especially true where, as here, the words of the policy give notice that such change, if to a more hazardous occupation, will lessen the indemnity in an amount fixed by a change in the rate of premium. The construction contended for by the plaintiff would render immaterial all rates and classifications made after the issue of the policy. It would make the reference to the table or manual filed prior to the occurrence of the injury meaningless; for we cannot suppose any one would contemplate that the amount recoverable could be changed after the right to recover had accrued. It would leave open to the insured opportunity to change his occupation from that stated in the policy to any occupation which by chance was not included in the table of rates and manual of classification of risks on file when the insurance attached, no matter how hazardous in comparison with the original employment, and without affecting his right to indemnity.

We cannot so construe this policy. *Morse* v. *Fraternal Accident Society*, 190 Mass. 417, is not controlling here. The language there construed differs from the words of the policy before us. Moreover, there was no statute in force when that case was decided dealing with the provisions to be inserted in an accident policy and contemplating that the contract can be "modified" by subsequent changes in

classification of risks.   It was not until St. 1910, c. 493, § 1, that the Legislature regulated the terms of the policy.   That decision is based upon the determination that the original contract did not provide for alteration.

It results that the judge in the Superior Court was wrong in sustaining the demurrer of the plaintiff to so much of the defendant's answer as sets up this ground of defence.   The order is reversed, the demurrer is overruled, and the case is to stand for further proceedings in the trial court.

*So ordered.*